**UNITED STATES of America, Appellee,**

v.

**James SHAW, Appellant.**

No. 86–5363.

United States Court of Appeals, Eighth Circuit.

Submitted March 12, 1987.

Decided July 14, 1987.

Rehearing Denied Aug. 12, 1987.

Stanley E. Whiting, Winner, S.D., for appellant.

Bonnie Ulrich, Asst. U.S. Atty., Sioux Falls, S.D., for appellee.

Before JOHN R. GIBSON, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and BOWMAN, Circuit Judge.

JOHN R. GIBSON, Circuit Judge.

After hearing testimony that James Shaw had engaged in numerous acts of sexual intercourse with S.A., his eleven year old foster daughter, a jury found Shaw guilty of seven counts of carnal knowledge, 18 U.S.C. §§ 1153, 2032 (1982). Shaw's primary contention on appeal is that the district court[1] erred in refusing to allow evidence of S.A.'s past sexual behavior for the purpose of proving that Shaw was not the person responsible for S.A.'s ruptured hymen. We conclude that the testimony at trial failed to establish that there was an "injury" under Federal Rule of Evidence 412(b)(2)(A), and the district court thus correctly excluded evidence of S.A.'s past sexual behavior. Shaw also argues that certain testimony of two witnesses was inadmissible hearsay. We affirm the district court's judgment of conviction.

In February 1985, an anonymous caller informed the South Dakota Department of Social Services of rumors that S.A. was being physically abused at her home. Angela Keierleiber, a social worker, met with S.A. at her school. During the course of several conversations, S.A. told Keierleiber about her frequent instances of sexu-

al intercourse with Shaw. This led to the ten-count indictment of Shaw, charging him with eight acts of carnal knowledge in violation of 18 U.S.C. §§ 1153 and 2032 and two acts of interstate transportation for immoral purposes in violation of 18 U.S.C. § 2421 (1982).

At trial S.A. testified that about two weeks before Easter 1984, when she was eleven, Shaw first subjected her to sexual intercourse. Two weeks later they again had sexual intercourse. She testified that it then began happening regularly, occurring about twice a week, sometimes more. It continued because she was afraid to tell anyone. S.A. testified specifically as to the incidents supporting the counts for which Shaw was indicted, usually relating the date of each act of sexual intercourse to an event, such as a summer fair, a holiday, or a sporting event.

S.A. testified that the last sexual incident occurred in March 1985. On April 11, 1985, Keierleiber had S.A. removed from her home and placed in another foster home. That same day a physician's assistant, Betty Kalblinger, examined S.A. At trial the government elicited Kalblinger's testimony regarding the results of this examination. She testified that the condition of S.A.'s hymen indicated that S.A. had engaged in sexual intercourse. Two other government witnesses who examined S.A., Catherine Buck and Dr. Clark Likness, gave similar testimony.

After a five-day jury trial, Shaw was convicted of seven counts of carnal knowledge. He was sentenced to three concurrent fifteen-year terms of imprisonment and four concurrent ten-year terms of imprisonment, with the ten-year terms to be served consecutive to the fifteen-year terms. This appeal followed.

## I.

The government undoubtedly introduced evidence concerning S.A.'s hymen to establish that its condition was consistent with her having engaged in sexual intercourse. This evidence, coupled with S.A.'s testimony, allowed the inference that Shaw caused this condition when they had sexual

1. The Honorable Donald J. Porter, United States District Judge for the District of South Dakota.

intercourse. Shaw contends that he should have been allowed to rebut this evidence by showing that someone else was responsible for the condition of S.A.'s hymen.[2] In compliance with Federal Rule of Evidence 412(c)(1),[3] Shaw filed a pretrial written motion, proffering evidence to rebut the government's evidence of the condition of S.A.'s hymen. The motion asserted that seven young boys would testify that they had sexual intercourse with S.A., one that he had sexual intercourse with S.A. fifty times. The district court rejected Shaw's motion, which was raised several times during the trial, ruling as a matter of law that the rupturing of a hymen does not constitute a Rule 412(b)(2)(A) "injury."

■ In 1978 Congress made the first addition to the Federal Rules of Evidence when it enacted Rule 412, the federal rape-shield law. Rule 412 prohibits the introduction of evidence of an alleged rape vic-

2. Shaw also argues that he should have been allowed to introduce evidence of S.A.'s past sexual behavior to rebut other evidence introduced by the government of S.A.'s physical condition, such as the presence of a sexually transmitted disease. In his pretrial motion, however, Shaw listed only a penetrated hymen as the injury triggering his right to introduce evidence under Rule 412(b)(2)(A). During trial Shaw proffered evidence based on other purported injuries, but the district court rejected this motion, in part because it was untimely. *See* Fed.R.Evid. 412(c)(1). In this respect, the district court did not abuse its discretion. *Cf. United States v. Holy Bear,* 624 F.2d 853, 855–56 (8th Cir.1980). We also reject Shaw's argument that the government's evidence of S.A.'s emotional state created an issue of the source of an "injury" under subdivision (b)(2)(A). Shaw failed to raise this matter in his pretrial motion. Furthermore, it is clear that Rule 412's injury exception does not apply to emotional injuries unaccompanied by a cognizable physical consequence. *See* 124 Cong.Rec. 34913 (1978) (subdivision (b)(2)(A) applies to "certain physical consequences").

3. The relevant portions of Federal Rule of Evidence 412 state:

(a) Notwithstanding any other provision of law, in a criminal case in which a person is accused of rape or of assault with intent to commit rape, reputation or opinion evidence of the past sexual behavior of an alleged victim of such rape or assault is not admissible.

(b) Notwithstanding any other provision of law, in a criminal case in which a person is accused of rape or of assault with intent to commit rape, evidence of a victim's past sexual behavior other than reputation or opinion evidence is also not admissible, unless such evidence other than reputation or opinion evidence is—

\*  \*  \*  \*  \*  \*

(2) admitted in accordance with subdivision (c) and is evidence of—

(A) past sexual behavior with persons other than the accused, offered by the accused upon the issue of whether the accused was or was not, with respect to the alleged victim, the source of semen or injury; or

\*  \*  \*  \*  \*  \*

(c)(1) If the person accused of committing rape or assault with intent to commit rape intends to offer under subdivision (b) evidence of specific instances of the alleged victim's past sexual behavior, the accused shall make a written motion to offer such evidence not later than fifteen days before the date on which the trial in which such evidence is to be offered is scheduled to begin, except that the court may allow the motion to be made at a later date, including during trial, if the court determines either that the evidence is newly discovered and could not have been obtained earlier through the exercise of due diligence or that the issue to which such evidence relates has newly arisen in the case. Any motion made under this paragraph shall be served on all other parties and on the alleged victim.

(2) The motion described in paragraph (1) shall be accompanied by a written offer of proof. If the court determines that the offer of proof contains evidence described in subdivision (b), the court shall order a hearing in chambers to determine if such evidence is admissible. At such hearing the parties may call witnesses, including the alleged victim, and offer relevant evidence. Notwithstanding subdivision (b) of rule 104, if the relevancy of the evidence which the accused seeks to offer in the trial depends upon the fulfillment of a condition of fact, the court, at the hearing in chambers or at a subsequent hearing in chambers scheduled for such purpose, shall accept evidence on the issue of whether such condition of fact is fulfilled and shall determine such issue.

(3) If the court determines on the basis of the hearing described in paragraph (2) that the evidence which the accused seeks to offer is relevant and that the probative value of such evidence outweighs the danger of unfair prejudice, such evidence shall be admissible in the trial to the extent an order made by the court specifies evidence which may be offered and areas with respect to which the alleged victim may be examined or cross-examined.

(d) For purposes of this rule, the term "past sexual behavior" means sexual behavior other than the sexual behavior with respect to which rape or assault with intent to commit rape is alleged.

tim's past sexual behavior subject to three exceptions. The relevant exception to this general rule, Rule 412(b)(2)(A), states that, subject to the procedural and relevancy requirements of subdivision (c), evidence of specific instances of an alleged rape victim's past sexual behavior with persons other than the accused is admissible if "offered by the accused upon the issue of whether the accused was or was not, with respect to the alleged victim, the source of semen or injury." Only the government can raise "the issue" of the source of an injury. Rule 412's general rule prohibiting past sexual behavior evidence could be too easily evaded if a defendant could introduce evidence of an injury to the complainant only to then attack it with evidence of the complainant's past sexual behavior. *See generally* 23 C. Wright & K. Graham, *Federal Practice & Procedure* § 5388, at 595 (1980).

Accordingly, the question before us is whether the testimony elicited by the government regarding the condition of S.A.'s hymen created an issue of whether Shaw was or was not, with respect to S.A., "the source of semen or injury." Fed.R. Evid. 412(b)(2)(A). On appeal both parties seem to assume, as the district court did, that the consequences to S.A.'s hymen constitute an injury, and the only issue is whether this type of injury falls within Rule 412's injury exception. We conclude that our analysis should not start with this assumption, but rather, we must examine the relevant testimony to determine whether the described condition of S.A.'s hymen constitutes an injury. In so doing, we look particularly to the government-elicited testimony, but we also feel it is appropriate to consider any testimony, including that elicited by the defense, if it helps determine whether the government's evidence has created an issue of the source of an injury.

Betty Kalblinger, a physician's assistant who examined S.A. on April 11, 1985, provided the only testimony in the government's case-in-chief regarding S.A.'s hy-men. Kalblinger testified that she performed a pelvic examination and found that S.A.'s "vaginal orifice was widened," which "indicated that there had been sexual activity or some form of vaginal dilation going on." Tr. 303. "The hymen was not intact"; it had been "penetrated." Tr. 304. She did not observe any tears in the hymen, any scars, any tears that may have healed, or any injury to the vaginal canal. Tr. 310. She explained that at birth a female normally has a small perforation in her hymen. When a female has sexual intercourse, it creates "a widening of the vaginal orifice." Tr. 313–14. However, she explained that:

> [T]here is a misunderstanding as to the tearing of a hymen. The hymen doesn't become torn or anything. It just becomes more stretched and open and the hymen * * * stretches out. It isn't like tearing it open or cutting it open or anything like that. It's just a normal process of widening out.

Tr. 314.

The defense's cross-examination of Kalblinger on this issue concluded with the following:

> Q: Therefore when people talk about a ruptured hymen, they are talking about perhaps some type of vaginal penetration that has torn the hymen, is that correct?
>
> A: It has destroyed the intactness of it.

Tr. 316.

As a rebuttal witness, the government called Catherine Buck, a certified nurse midwife who examined S.A. on September 17, 1985.[4] She testified that in researching S.A.'s history, she learned "that [S.A.] had been seen by one practitioner who said [S.A.] was not a virgin, said [S.A.] had a ruptured hymen." Tr. 618. She testified that "[t]he hymen is a stretchy ring of tissue" about the vaginal opening and that the size of the hymenal opening "is not absolute because of the stretchy nature of the tissue." Tr. 627. She further testified that the opening to S.A.'s vagina permitted an examination and, based on this examina-

---

**4.** Before the government called its rebuttal witnesses, the defense elicited the testimony of Dr. Mark Werpy, who testified that the condition of S.A.'s intact hymen indicated that she had not had sexual intercourse. Dr. Werpy's testimony, thus, does not reach the issue before us and actually is inconsistent with the necessary predicate for the testimony Shaw seeks to introduce.

tion, she concluded that intercourse "was a possibility." Tr. 623.

The government also called as a rebuttal witness Dr. Clark Likness, a board-certified family practice physician who examined S.A. in January 1986. He testified that there was a definite widening or opening of S.A.'s vaginal orifice. He explained that the hymen is "made of elastic tissue which is in fact stretchable." Tr. 665. As to S.A., "there was no hymenal membrane present at all and for the most part her hymenal ring in the lower segments of her vaginal opening was gone." Tr. 654. He did not find any blood, cuts, scratches, scars, or fresh bruises. Tr. 649. Dr. Likness explained that many activities besides sexual activity can cause a hymen to lose its intactness. He testified that "as the female gets older, through activities, physical activities, sexual activities and just normal growth and development the hymen itself will slowly open up. We're talking about the hymenal membrane. It will leave remnants of what we call a hymenal ring and that ring is obvious in all females." Tr. 659. He thus explained that:

> [T]he old adage was that in order for a woman to have intercourse she would have to rupture her hymen which in turn would cause bleeding. That is not founded anymore. That in fact is very untrue. It has become kind of an obsolete theory. In fact in most cases we now see young women capable of having vaginal intercourse without rupturing their hymenal membrane because it isn't there anymore. The ring may still be there but as we said earlier you can have active sexual intercourse on an intermittent or repeated basis without bleeding and without scarring but usually pain.

Tr. 660.

Dr. Likness concluded that while the condition of a female's hymen does not necessar-

ily indicate whether she has or has not engaged in sexual intercourse, his opinion was that the condition of S.A.'s vaginal area indicated that she "had definitely had sexual activity." Tr. 650.

■ Based on this testimony, we conclude that the evidence regarding S.A.'s hymen did not establish the existence of an "injury." The witnesses expressly disavowed finding any evidence of tears to S.A.'s hymen, cuts, scratches, bruises, blood, injury to the vaginal canal, tears that may have healed, or scars. Such findings would demonstrate infliction of an injury. The absence of all of these indicia, however, strongly suggests that while the condition of S.A.'s vaginal area may have changed, she was not injured. The testimony, in sum, indicated that S.A.'s hymen was not intact; it had been stretched; her vaginal orifice was widened.[5] Even if this physical condition was the result of sexual intercourse, it is not an injury. Unlike a situation where the evidence indicates, for example, that sexual intercourse caused a tearing or bruising of the hymen or unusual bleeding, the evidence concerning S.A.'s hymen, while it may describe a physiological accommodation, falls short of establishing an injury so as to trigger the applicability of Rule 412's injury exception.

Shaw argues we should read Rule 412's injury exception broadly to authorize the introduction of past sexual behavior evidence when it is offered to establish the source of any physical consequence. Several commentators support this contention. For example, Professors Wright and Graham contend that a defendant should be allowed to introduce past sexual behavior evidence whenever the prosecution introduces evidence of "any 'physical conse-

---

5. We have found only two statements in the transcript where the adjective "ruptured" appears. In reading the transcript as a whole, however, we do not think this word describes what allegedly happened to S.A.'s hymen when, as the government contended, she had sexual intercourse with Shaw. The word was used once by the defense attorney cross-examining Kalblinger. Tr. 316. He was not specifically discussing S.A.'s condition, however. More-

over, Kalblinger never used the word "ruptured" when describing S.A.'s condition. Katherine Buck also used the word "ruptured" in what appears to be a hearsay statement of Kalblinger's. Tr. 618. Because Kalblinger testified at length regarding the matter Buck condensed into a single hearsay statement, we think it is appropriate to disregard this hearsay statement and rely instead on Kalblinger's extensive live testimony.

606

quences' offered to prove that the act took place." 23 C. Wright & K. Graham, *Federal Practice & Procedure* § 5388, at 598 (1980); *see also* Galvin, *Shielding Rape Victims in the State and Federal Courts: A Proposal for the Second Decade*, 70 Minn.L.Rev. 763, 818–25 (1986) (the exception should be "directed to *all* possible physical consequences of rape alleged by the prosecution"); *cf.* Berger, *Man's Trial, Woman's Tribulation: Rape Cases in the Courtroom*, 77 Colum.L.Rev. 1, 58 (1977) ("If the accused is not conceding that he committed the act but rather is striving to point the finger at someone else, the law should not deny him crucial proof on these issues merely because it has the effect of revealing some of the victim's history."); Note, *Indiana's Rape Shield Law: Conflict with the Confrontation Clause?*, 9 Ind.L.Rev. 418, 425 (1976) ("There is also an obvious probative value to evidence which discloses previous intercourse with someone other than the defendant when such evidence can account for a physical fact in evidence at the trial * * *."); *People v. Mikula*, 84 Mich.App. 108, 269 N.W.2d 195, 198 (1978) (illogical to exclude vaginal injuries from Michigan's subdivision (b)(2)(A)–type exception, which allows past sexual behavior evidence when there is an issue as to "the source of semen, pregnancy, or disease"). We recognize that a compelling argument supporting this contention is that it defies principles of relevancy to allow past sexual behavior evidence to rebut evidence of a physical consequence that constitutes an injury (for example, evidence that the defendant broke the complainant's nose), while prohibiting it for evidence of a physical consequence that does not constitute an injury (for example, evidence that the defendant caused a stretching of the complainant's hymen). The defendant's need to introduce source evidence is equally strong regardless of what type of physical consequence the prosecution contends the defendant caused when he allegedly raped the complainant. Moreover, it can be argued that the type of physical consequence in issue has no bearing on the probative value of the past sexu-

al behavior evidence. *E.g., People v. Mikula*, 269 N.W.2d at 198; Galvin, *supra*, at 818–25.

We think that while these evidentiary concerns have persuasive force when viewed in an isolated context, they do not withstand the fact that when Congress created the injury exception to Rule 412, it decided to exclude past sexual behavior evidence in numerous situations where these same evidentiary concerns would dictate that the evidence be admitted. When Congress enacted the injury exception to Rule 412, it had to weigh competing interests: On one hand, the defendant's need to introduce relevant evidence; on the other hand, the complainant's interest in not having her sexual history publicly disclosed and society's concomitant interest in having rapes reported and effectively prosecuted. *See, e.g.*, 124 Cong.Rec. 34912–13 (1978). In balancing these interests, Congress faced a range of alternatives. At one end of the continuum, Congress could have done nothing and allowed the admission of past sexual behavior evidence to rebut the prosecution's physical fact evidence whenever the probative value of the past sexual behavior evidence was not substantially outweighed by its unfair prejudicial effect. *See* Fed.R.Evid. 403. If that were the case, we would now be guided by *United States v. Kasto*, 584 F.2d 268 (8th Cir.1978), *cert. denied*, 440 U.S. 930, 99 S.Ct. 1267, 59 L.Ed.2d 486 (1979), where this court concluded that when a trial court balances the probative value of prior sexual behavior evidence against the evidence's unfair prejudicial impact, the result may be to allow prior sexual behavior evidence when "the evidence is explanative of a physical fact which is in evidence at trial, such as the presence of semen, pregnancy, or the victim's physical condition indicating intercourse." *Id.* at 271 n. 2.

Congress chose, however, to enact the Rule 412 injury exception and prohibit past sexual behavior evidence in numerous situations where such evidence would be highly probative.[6] Admittedly, by distinguishing

**6.** In some of these situations, of course, the

defendant may have a constitutional right to

between physical consequences that are injuries and those that are not, Congress did not select a point based solely on relevancy considerations at which to draw the line of admissibility. At the same time, there is no reason to include all physical consequences in the injury exception when numerous other types of "physical fact" evidence that do not fall under Rule 412(b)(2)(A) could just as appropriately be rebutted by past sexual behavior evidence. To be sure, there is nothing in the legislative history to Rule 412 indicating that we should expand the word "injury" beyond its commonly understood meaning. The only meaningful statement as to the scope of the injury exception came from the bill's sponsor, Representative Holtzman, who stated that subdivision (b)(2)(A) allows evidence of the alleged victim's past sexual behavior when the defendant's defense is that he had no sexual relations with the alleged victim and "the evidence rebuts the victim's claim that the rape caused *certain* physical consequences, such as semen or injury." 124 Cong.Rec. 34913 (1978) (emphasis added). This statement only supports our conclusion that the injury exception covers limited enumerated physical consequences.[7]

■ We are also convinced that calling the physical consequence to S.A.'s hymen an "injury" would contradict Congress' intention to subject Rule 412 to stringent temporal limitations. In discussing the purpose of Rule 412, Representative Mann stated:

The effect of this legislation, therefore, is to preclude the routine use of evidence of specific instances of a rape victim's prior sexual behavior. Such evidence will be admitted only in clearly and narrowly defined circumstances and only after an in camera hearing. In determining the admissibility of such evidence, the court will consider all of the facts and circumstances surrounding the evidence, such as the amount of time that lapsed between the alleged prior act and the rape charged in the prosecution. The greater the lapse of time, of course, the less likely it is that such evidence will be admitted.

124 Cong.Rec. 34913 (1978).

The temporal limitation urged by Representative Mann manifests itself in subdivision (b)(2)(A). Subdivision (b)(2)(A), as passed with its "semen or injury" language, deleted language of an earlier bill, which would have allowed past sexual behavior evidence when there was an issue of "the source of pregnancy, disease, semen, or injury." H.R. 408, 95th Cong., 1st Sess. (1977). Significantly, "pregnancy" and "disease" are both consequences that can be caused by sexual activity occurring many months, in the case of "pregnancy," and possibly many years, in the case of "disease," before the alleged rape. On the other hand, it is safe to say that evidence of past sexual behavior to prove the "source of semen" would, depending on medical evidence, be limited to sexual activity occurring a short time, probably a few days, before the alleged rape. We think that like the "semen" exception and unlike the abandoned "pregnancy" and "disease"

---

introduce this evidence. *See* Fed.R.Evid. 412(b)(1). Questions as to the scope and meaning of Rule 412(b)(1) are not before us today, however. By failing to raise a Rule 412(b)(1) argument in the district court through either a written motion or orally at trial, Shaw waived his right to obtain full review of this argument on appeal. *See, e.g., Powell v. Burns,* 763 F.2d 337, 338–39 (8th Cir.1985).

7. Despite suggestions to the contrary, *see* C. Wright & K. Graham, *supra,* at 598 n. 57, we are not persuaded that the "such as" language in this statement indicates that the items listed in subdivision (b)(2)(A) are simply illustrative of other "physical consequences" that fall within the exception. First, the language of subdivision (b)(2)(A) contains nothing to support this

suggestion. Second, the "such as" language is a reiteration of an earlier statement of Representative Holtzman's concerning a predecessor bill to the bill containing Rule 412, which provided in subdivision (b)(2)(A) that prior sexual behavior evidence may be presented when there is an issue as to "the source of pregnancy, disease, semen, or injury." H.R. 408, 95th Cong., 1st Sess. (1977). In discussing the four aspects of that exception, Representative Holtzman abbreviated her remarks by stating that the exception applies when "the evidence rebuts the victim's claim that the rape caused certain physical consequences, such as pregnancy or injury." *Hearing Before the Subcomm. on Criminal Justice of the House Comm. on the Judiciary,* 94th Cong., 2d Sess. 2 (1976).

exceptions, the "injury" exception allows a court to deviate from Rule 412's general rule only when the evidence establishes an injury—such as a cut, bruise, or tear—that was sustained reasonably close in time to the alleged rape. The physical consequence to S.A.'s hymen—a consequence that could have been caused by sexual activity a substantial amount of time before the alleged acts of sexual intercourse with Shaw—does not satisfy this criterion.

In construing the meaning of Rule 412(b)(2)(A), a court "must begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose." *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 194, 105 S.Ct. 658, 662, 83 L.Ed.2d 582 (1985). Our review of the legislative history to Rule 412's injury exception convinces us that Congress had no intention to expand the commonly understood meaning of the word "injury" to include all physical consequences. We thus hold that the district court did not err in excluding evidence of S.A.'s past sexual behavior.[8]

## II.

Shaw's two other principal arguments relate to the district court's admission of hearsay. Dr. Clark Likness and Angela Keierleiber interviewed S.A. on separate occasions. S.A. told them about the incidents of sexual intercourse with Shaw. The district court allowed Likness and Keierleiber to testify as to what S.A. said. The court ruled that while S.A.'s statements were hearsay, Likness' testimony was admissible under Rule 803(4), the hearsay exception for statements made for purposes of medical diagnosis or treatment, and Keierleiber's under Rule 803(24), the residual hearsay exception. Reviewing the district court's evidentiary rulings under an abuse of discretion standard, *e.g., United States v. White Horse*, 807 F.2d 1426, 1432 (8th Cir.1986), we conclude that the court

did not err in admitting either Likness' or Keierleiber's testimony.

### A.

In January 1976, S.A.'s aunt took her to see Dr. Likness. He examined S.A. to see if she had been sexually abused and, because he determined she had, prescribed a treatment. At trial he was allowed to testify as to what S.A. had told him about the numerous incidents of sexual intercourse with Shaw. Shaw argues that S.A.'s statements were not "reasonably pertinent to diagnosis or treatment," and thus failed to meet the hearsay exception of Rule 803(4).

In *United States v. Renville*, 779 F.2d 430 (8th Cir.1985), we analyzed the two-part test of Rule 803(4), *see United States v. Iron Shell*, 633 F.2d at 77, as it applies to statements of fault made to a physician by a child who has been sexually abused by a household member. 779 F.2d at 435–39. We reasoned that in such a situation the rationale for excluding statements of fault from Rule 803(4) is inapplicable. Statements of fault made to a physician by a child who has been sexually abused by a household member meet *Iron Shell's* two-part test and are admissible under Rule 803(4). *Id.* at 439. Shaw argues that *Renville* does not control here because Dr. Likness examined S.A. only for purposes of making a diagnosis, whereas the doctor in *Renville* examined the child for treatment purposes. The record does not support this argument. Dr. Likness testified that he examined S.A. for the purpose of making a diagnosis and recommending a plan of treatment. Tr. 638. Finding nothing to materially distinguish the situation here from that in *Renville*, we hold that the district court did not abuse its discretion in admitting Dr. Likness' testimony under Rule 803(4).

### B.

On April 10, 1985, Angela Keierleiber first interviewed S.A. During this and sev-

---

**8.** While the district court never held a formal Rule 412(c) hearing, it did rule, after considering Shaw's written motions which were supplemented by several lengthy colloquies with counsel, that the probative value of evidence of S.A.'s past sexual behavior would be outweighed by its unfair prejudicial impact. *See* Fed.R.Evid. 412(c)(3). Because we hold that the evidence failed to establish the existence of an "injury," we need not consider this ruling.

eral subsequent conversations, S.A. recounted the incidents of sexual intercourse with Shaw. At trial the court allowed Keierleiber to testify as to what S.A. said in these interviews, ruling that the statements satisfied each of the following five requirements of the residual hearsay exception:

(1) The statement must have circumstantial guarantees of trustworthiness equivalent to the twenty-three specified exceptions listed in Rule 803;

(2) The statement must be offered as evidence of a material fact;

(3) The statement must be more probative on the point for which it is offered than any other evidence the proponent can procure through reasonable efforts;

(4) The general purposes of the Federal Rules of Evidence and the interests of justice must best be served by admission of the statement into evidence;

(5) The proponent of the evidence must give the adverse party the required notice.

Fed.R.Evid. 803(24); *e.g., Renville,* 779 F.2d at 439.

Shaw argues on appeal only that the district court erred in finding that the hearsay statements were more probative on the point for which they were offered than any other evidence the government could have procured through reasonable efforts.[9] Specifically, he contends that because S.A. testified to essentially the same matters addressed in the hearsay statements, the "more probative" requirement of Rule 803(24) was not met.

"The trial court is entitled to a considerable measure of discretion in deciding whether to admit hearsay evidence under Rule 803(24), and its determination of admissibility of evidence under Rule 803(24) will not be overturned on appeal except for an abuse of discretion." *United States v. Cree,* 778 F.2d 474, 477 (8th Cir.1985) (citations omitted). There is hardly a more appropriate situation for such a deferential standard of review than this one where we must read a written transcript and assess the relative probative values of two witnesses' live testimonies. Our ability to make this assessment is in stark contrast to the district judge's; he was able to watch and listen to the witnesses as they testified.

On several occasions we have addressed the situation where, pursuant to Rule 803(24), the trial judge has allowed an adult to testify as to what a child abuse victim told the adult about the abusive situation. *See, e.g., United States v. Dorian,* 803 F.2d 1439 (8th Cir.1986); *United States v. Cree,* 778 F.2d at 474; *United States v. Renville,* 779 F.2d at 430. We have recognized that while Congress intended the residual hearsay exception to "be used very rarely, and only in exceptional circumstances," S.Rep. No. 1277, 93d Cong., 2d Sess. 20, *reprinted in* 1974 U.S. Code Cong. & Admin.News 7051, 7065–66, one such exceptional circumstance generally exists when a child abuse victim relates to an adult the details of the abusive events. *Dorian,* 803 F.2d at 1443–46; *Cree,* 778 F.2d at 476–78; *Renville,* 779 F.2d at 439–41. Shaw correctly notes, however, that in these cases, the adult witness' testimony of what the child abuse victim said was more probative than any other reasonably pro-

9. While Shaw does not dispute that the hearsay statements meet the "trustworthiness" requirement of Rule 803(24), it is important to consider their degree of trustworthiness, for as the trustworthiness of a statement increases, the justification for excluding it as hearsay decreases. *See* Fed.R.Evid. 803 advisory committee note (hearsay rule exceptions are situations where circumstantial guarantees of trustworthiness justify admission of statement). The circumstances indicate that S.A.'s statements to Keierleiber are highly trustworthy. S.A.'s testimony at trial was consistent with the hearsay statements, and she repeated a consistent story to others, such as Dr. Likness. Also, S.A. was only eleven years old; she often cried when she talked about the sexual incidents; she was able to detail the sexual acts; and other evidence, such as the testimony concerning her physical condition, corroborated her statements. Most importantly, because S.A. testified at trial, she was subject to cross-examination. "The availability of the declarant at trial vitiates the main concern of the hearsay rule, which is the lack of any opportunity for the adversary to cross-examine the absent declarant." *Renville,* 779 F.2d at 440 (citing *United States v. Bohr,* 581 F.2d 1294, 1304 (8th Cir.), *cert. denied,* 439 U.S. 958, 99 S.Ct. 361, 58 L.Ed.2d 351 (1978)).

curable evidence because the child was too frightened and uncommunicative to testify meaningfully, *Dorian,* 803 F.2d at 1445, or the child had recanted her earlier accusations, *Renville,* 779 F.2d at 432, 439.[10] In this case, on the other hand, S.A. testified at length as to the incidents of sexual intercourse with Shaw.

 Keierleiber's hearsay testimony undoubtedly retraced some of S.A.'s testimony. But this alone does not render erroneous the district court's ruling. As Judge Weinstein emphasized, "[e]ven though the evidence may be somewhat cumulative, it may be important in evaluating other evidence and arriving at the truth so that the 'more probative' requirement can not be interpreted with cast iron rigidity." 4 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 803(24)[01], at 803-379 (1985). The district court reasoned that Keierleiber's testimony was "more probative" than S.A.'s for several reasons. Keierleiber's testimony reflected the first known statements S.A. made to anyone about the sexual incidents. The hearsay statements were made just days after the last sexual incidents. And most importantly, they contained specific details as to the dates of the incidents—details that S.A. could not provide at trial. The record supports these conclusions. We hold that the trial court did not abuse its discretion in allowing Keierleiber's testimony.

Shaw raises several other evidentiary objections. Specifically, Shaw argues that the district court erred in excluding evidence of S.A.'s credibility, such as her opposition to a family move to another city; testimony concerning Shaw's attempt to adopt S.A.; Shaw's testimony of S.A.'s watching a Playboy television channel (which was the subject of several other witnesses' testimony); certain testimony of Dr. Werpy; and evidence that S.A. wanted to move back home after leaving the Shaw household. We conclude that these contentions are without merit.

The district court's judgment of conviction is affirmed.

---

10. The defendant in *Cree* did not argue on appeal that the hearsay statements failed the "more probative" requirement of Rule 803(24).

*Cree,* 778 F.2d at 477. Neither the prosecution nor the defense in that case called the child abuse victim to the witness stand. *Id.* at 478.