UNITED STATES of America, Appellee,

v.

James O. WILLIAMS, Jr., Appellant.

No. 89–2237.

United States Court of Appeals,
Eighth Circuit.

Submitted March 13, 1990.

Decided May 3, 1990.

---

James C. Delworth, St. Louis, Mo., for appellant.

James E. Crowe, Jr., St. Louis, Mo., for appellee.

Before JOHN R. GIBSON, Circuit Judge, BRIGHT, Senior Circuit Judge, and MAGILL, Circuit Judge.

BRIGHT, Senior Circuit Judge.

James O. Williams, Jr. appeals his conviction under 18 U.S.C. §§ 371, 1708 and 2314 (1988) on five related counts, including theft of mail and the receipt and transportation of stolen mail in furtherance of a fraudulent check-cashing scheme. In challenging his conviction, Williams contends the Government's introduction of undisclosed photographs unduly prejudiced his defense. Williams also appeals his sentence under the Sentencing Guidelines, contending that the jury should have determined his relevant defense conduct by way of a proffered special verdict form and that the district court clearly erred in concluding that he acted as a leader/organizer. We affirm.

## I. BACKGROUND

All five counts on which the jury convicted Williams, including one count of conspiracy, reflect Williams' part in a fraudulent check-cashing scheme. Williams and two co-conspirators operated this scheme as follows.

The group would drive to a large metropolitan area, find a fairly affluent neighborhood and steal the mail residents had left in their mailboxes for the Postal Service to pick up. The group would search this pilfered mail until they found checks the residents had written, usually to pay bills, drawn on local banks.

The conspirators would then fill out a previously stolen blank check of one Michael Hahn,[1] using as payee the name of a

---

1. Testimony at trial revealed that on May 16, 1988, two boxes containing 400 personalized checks were mailed by the printer in St. Louis to Michael and Charlene Hahn at their home

local resident whose check they had just stolen from the resident's mailbox and forging Hahn's signature as maker. They then forged by duplication the payee's endorsement on the check.

In the final step of this scheme, the conspirators cashed or attempted to cash the stolen and forged checks at the bank of the named payee. Because the payee on the forged check was a customer at the local bank, the group often succeeded in cashing these checks. To lessen the chances of being detected while posing as the bank's customer, the group made a practice of using the bank's drive-in facilities and entering at the drive-in lane furthest from the drive-in teller's window.

Subsequently, a grand jury indicted Williams on one count of conspiracy to receive and transport stolen mail, one count of theft or receipt of stolen mail and three counts of transporting stolen mail in interstate commerce. Following his conviction on all five counts, the district court[2] sentenced Williams to forty-two months imprisonment on each count, to be served concurrently. This appeal followed.

## II. DISCUSSION

Williams contends the district court committed reversible error by: (1) failing to exclude three previously undisclosed photographs the prosecution had offered into evidence; (2) refusing to submit a special verdict form proffered by the defense; and (3) upwardly departing from the Guidelines because of an incorrect determination that Williams acted as a leader/organizer of the conspiracy.

■ As to the first issue, the Government introduced into evidence three photographs which the Government failed to disclose the existence of until the second day of trial. Prosecution witnesses identified

these photographs as part of a series of photographs routinely taken of customers at the drive-in window at Valley Bank in Middleton, Wisconsin. The photographs show the customers, in this case Williams, who cashed one of the stolen and forged checks at issue in this case.

■ The decision whether to admit or exclude evidence which the Government has failed to disclose before trial in violation of Fed.R.Crim.P. 16[3] is one of broad discretion resting with the district court. *United States v. Thornberg*, 844 F.2d 573, 580 (8th Cir.), *cert. denied*, 487 U.S. 1240, 108 S.Ct. 2913, 101 L.Ed.2d 944 (1988). An abuse of discretion exists only if prior nondisclosure of the evidence prejudiced the substantial rights of the defendant. *United States v. Brown*, 871 F.2d 80, 82 (8th Cir.1989). No abuse of discretion existed here.

The record discloses and the defense concedes the Government did not act in bad faith in failing to disclose the photographs earlier. The Government did not know the photographs existed until the evening of the first day of trial when the Valley Bank employees who were called to testify brought the videotape with them. *Cf.*, *United States v. Wicker*, 848 F.2d 1059, 1061 (10th Cir.1988) (affirming the district court's decision to impose sanctions because of the Government's bad faith failure to disclose evidence).

Additionally, the photographs cannot be characterized as new evidence. *See United States v. Masters*, 840 F.2d 587, 591 (8th Cir.1988). The previously disclosed photograph from the same series showed a profile view of a drive-in customer. The undisclosed photographs recorded a frontal view of the same customer, as well as his left hand, which had a finger missing. Williams' left hand also has a finger missing. The effect of the additional photo-

near Cape Girardeau, Missouri. These checks never arrived at the Hahn residence.

2. The Honorable Edward L. Filippine, United States District Judge for the Eastern District of Missouri.

3. Fed.R.Crim.P. 16(c) reads:

**Continuing Duty to Disclose.** If, prior to or during trial, a party discovers additional evidence or material previously requested or ordered, which is subject to discovery or inspection under this rule, such party shall promptly notify the other party or that other party's attorney or the court of the existence of the additional evidence or material.

graphs, therefore, was in part cumulative. Moreover, the defense received timely notice that the Government would offer evidence of this type at trial. *Id.*

In these circumstances, we reject Williams' contention that the district court's failure to exclude these photographs unduly prejudiced his defense and constituted reversible error.

■ Williams submits as the district court's second ground of error the court's rejection of Williams' special verdict form on the conspiracy charge. This issue lacks merit.

■ As a general rule, courts avoid using special verdict forms because of their potential for confusing a jury. *United States v. Wilson,* 629 F.2d 439, 442 (6th Cir.1980). Additionally, the special verdict form proffered by Williams misstated the law. Williams' proffered form would have required the jury to find beyond a reasonable doubt that Williams was specifically associated with the cashing of each check. This requirement, however, is contrary to the rule that once the prosecution has established that the defendant was a party to a continuing criminal conspiracy, the prosecution may prove substantive offenses committed by a co-conspirator in furtherance of the conspiracy, even though the defendant himself did not participate in the substantive offenses nor have any knowledge of them. *Pinkerton v. United States,* 328 U.S. 640, 645–48, 66 S.Ct. 1180, 1183–84, 90 L.Ed. 1489 (1946).

■ Lastly, Williams contends the district court erred in upwardly departing from Sentencing Guideline § 3B1.1 because the court incorrectly found that he acted as a leader/organizer of the check stealing/forging/cashing operation. According to Williams, the timing and location of the criminal expeditions were joint decisions. The conspirators split the profits equally and all the participants were autonomous. Therefore, he should not be considered a leader/organizer.

The standard of review for a district court's findings of fact for sentencing purposes requires that a reviewing court accept those findings unless they are clearly erroneous. 18 U.S.C. § 3742(e) (1988); *United States v. Holland,* 884 F.2d 354, 358 (8th Cir.), *cert. denied,* —— U.S. ——, 110 S.Ct. 552, 107 L.Ed.2d 549 (1989). Here, the record supports the district court's finding.

In its analysis, the district court correctly focused on possession and control of the blank Hahn checks as the most significant guide to the sources of control in this conspiracy. The checks were the key tool for making money from the group's operation. Further, the evidence supports an inference that Williams' presence and control over the principal instrumentality of this criminal scheme remained constant for the duration of the conspiracy. *See United States v. Wagner,* 884 F.2d 1090, 1098 (8th Cir. 1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 1829, 108 L.Ed.2d 958 (1990). Therefore, the district court did not clearly err in concluding that Williams acted as a leader/organizer.

### III. CONCLUSION

Accordingly, we affirm the judgment of the district court.