UNITED STATES of America, Appellee,

v.

Gary LONGIE, Appellant.

No. 92–1660.

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 16, 1992.

Decided Jan. 29, 1993.

Constance Triplett, Grand Forks, ND, argued, for appellant.

Dennis D. Fisher, Asst. U.S. Atty., Fargo, ND, argued (Norman G. Anderson, Asst. U.S. Atty., on the brief), for appellee.

Before McMILLIAN, MAGILL, and HANSEN, Circuit Judges.

MAGILL, Circuit Judge.

Gary Longie appeals his conviction on two counts of aggravated sexual conduct with one of his daughters in violation of 18 U.S.C. § 2241(c) and § 1153. The abuse took place on the Devils Lake Sioux Indian Reservation in North Dakota at a time when the victim was less than twelve years old. Longie raises six issues on appeal. He argues that the trial court[1] erred in admitting documentary medical evidence not provided to the defense prior to trial, in permitting the prosecution to ask leading questions, in admitting hearsay testimony from a pediatrician, and in not issuing a cautionary instruction as to evidence of crimes not charged. Longie further contends that prosecutor misconduct mandates a new trial, and the evidence in total is insufficient to support the guilty verdicts. We reject all of Longie's arguments and affirm the convictions.

I.

This case involves aggravated sexual abuse by a natural father against his daughter during the time that the daughter was approximately six years old to the time

---

1. The Honorable Rodney S. Webb, Chief Judge, United States District Court for the District of North Dakota.

that she was approximately eleven years old. The primary evidence offered against Longie was the testimony of the child victim, twelve years old at the time of trial.

In describing when she was first molested by her father, the victim testified that she was six years old, and "I think it was in the first grade." She described that she was sleeping in her room alone, with her street clothes on. The victim described, in halting but considerably detailed testimony, how her father had entered her room and taken her clothes off. She testified, using language appropriate to her age, that her father had vaginal and anal intercourse with her. The victim testified that she was scared, she cried, and she tried to scream, but no one came to investigate. After the incident, the victim experienced bleeding and was ordered by Longie to wash her bed linens.

According to the victim, this same pattern was repeated over the next several years. The victim testified that Longie told her not to tell anyone about the abuse. She stated that she was frightened of her father. She could not recall specifically the frequency with which the abuse took place, offering only that it occurred "every once in a while."

The next incident of abuse that the victim described in detail took place in the home of a cousin where the Longie family was staying temporarily. The victim described a scenario very similar to the first incident in which Longie entered her bedroom while she slept and then proceeded to abuse her by anal intercourse. In describing the second incident, the victim recalled two specific additional facts. She testified that her father told her, "Oh, don't be scared." Furthermore, she testified that her father used two knives to secure the bedroom door against unwanted entry. She described how he stuck two knives along the side of the closed door jamb because the door had no conventional lock on it.

The final incident that the victim described in detail began in her bedroom at the Longies' house on the Devils Lake reservation. She specifically recalled that as her father approached her, he said, "Don't be scared, you will be all right." The victim then recounted that her father engaged her in vaginal intercourse. Later in her testimony, the victim stated that at one point Longie had made her lick his penis.

During this final incident that the victim described, the victim's older sister, Cheryl, witnessed the attack. After seeing her father abusing her sister, Cheryl fled the house and went to her cousin Nicole Longie's house in an effort to summon help. Cheryl told Nicole that she had seen her father sexually abusing the victim. Cheryl and Nicole then went to the home of Alberta Redfox, their aunt. The girls wanted Redfox to call the police, but Redfox had no phone. Ultimately, they were able to phone the police from a neighboring house.

By this time that same night, Gary Longie's brother, Kenny, had learned of Cheryl's allegations. Kenny went to Gary's house to alert him that the police would be investigating. Gary Longie, apparently in an effort to stave off any investigation at his house, loaded his wife and some of his children, including the victim, into the car and drove to the Redfox home. At the Redfox residence, a Fort Totten Bureau of Indian Affairs police officer, who had responded to the phone call, made some minor inquiries and then left.

At trial, Cheryl Longie, then fifteen years old, recanted her allegation that she had seen her father sexually abusing the victim. Cheryl testified that she had simply made up the story in order to get out of the house, and in the hopes of being placed in foster care. However, Nicole Longie, Cheryl's cousin, corroborated Cheryl's original allegation of abuse and testified that Cheryl was crying and frightened on the night she went to Nicole's house. Alberta Redfox further corroborated Nicole's testimony and stated at trial that on the night in question, both Nicole and Cheryl were tearful and scared. Redfox testified that she called the police that night to report Gary Longie for sexual abuse.

A social worker, Julie Carlson, also testified as to an interview she conducted with the victim in connection with the abuse.

Carlson testified as to a prior statement given to her by the victim about the abuse which was entirely consistent with the victim's trial testimony. Dr. Jean Fahey, a pediatrician, also testified at trial regarding her medical examination of the victim. The doctor concluded that the results of the examination were very suggestive of sexual abuse.

Gary Longie and his wife both testified for the defense. They denied the charges.

## II.

### A. Medical Evidence

Longie contends that the trial court erred in admitting into evidence photographs, a written report, and testimony relating to Dr. Fahey's medical examination, which had not been provided to the defense in advance of trial.

The prosecution obtained a medical report prepared by Dr. Fahey in connection with her examination of the victim well before trial and provided it to the defense. This initial report did not mention that Dr. Fahey had used a colposcope to take photographs of the victim's genitals. Because of Dr. Fahey's work schedule and the holidays, the United States Attorney's office was unable to interview Dr. Fahey in her Fargo office until December 30, 1991. December 30 was the first day of Longie's trial which was being conducted in Grand Forks, some eighty miles north of Fargo. It was at the December 30 interview that the government first learned of the colposcope photographs and an updated medical report prepared by Dr. Fahey. The government immediately subpoenaed the information and obtained copies of it.

On December 31, 1991, the government informed the defense of the new evidence and produced the information by telefax. The original documents were presented to the defense at the first available opportunity, on January 2, 1992, the day that trial resumed. The defense made a motion to exclude the photographs and the second medical report as violative of Federal Rule of Criminal Procedure 16. The district court denied the motion, but specifically offered the defense a delay to review the newly discovered evidence to prepare for cross-examination of Dr. Fahey. The defense did not avail itself of this offer by the court.

The decision whether to admit evidence the government had failed to disclose before trial in violation of Rule 16 is one of broad discretion resting with the trial court. *United States v. Williams*, 902 F.2d 675, 677 (8th Cir.1990). "An abuse of discretion exists only if nondisclosure of the evidence prejudiced the substantial rights of the defendant." *Id.* Because the government did not learn of this evidence until a late date and acted expeditiously to deliver it to the defense, we conclude that the government did not act in bad faith in failing to disclose the evidence sooner. *Id.* We further hold that the defendant's rights were not substantially prejudiced because he was offered an adequate opportunity to prepare for cross-examination. *United States v. Tibesar*, 894 F.2d 317, 319 (8th Cir.), *cert. denied*, 498 U.S. 825, 111 S.Ct. 79, 112 L.Ed.2d 52 (1990). We conclude the district court did not abuse its discretion in admitting this evidence.

### B. Leading Questions

At trial, the defendant made a continuing objection to the government's persistent use of leading questions in its direct examination of the victim. The defendant claims that leading questions were unnecessary in this case because the victim was able to understand the questions put to her and because she was an articulate child.

After a careful review of the record, we cannot accept the defendant's contentions. The victim in this case responded tentatively throughout her examination. The government's use of leading questions to elicit such difficult testimony from a young girl was entirely appropriate. *United States v. Littlewind*, 551 F.2d 244, 245 (8th Cir. 1977). The victim's hesitancy concerning her testimony is understandable given the nature of this case. *United States v. Iron Shell*, 633 F.2d 77, 92 (8th Cir.1980), *cert. denied*, 450 U.S. 1001, 101 S.Ct. 1709, 68 L.Ed.2d 203 (1981). The court did not

abuse its discretion in allowing leading questions in the examination. *United States v. Librach*, 520 F.2d 550, 556 (8th Cir.1975), *cert. denied*, 429 U.S. 939, 97 S.Ct. 354, 50 L.Ed.2d 308 (1976).

### C. Hearsay Testimony

The defendant objects to the admission of certain testimony by Dr. Fahey and certain portions of her medical report which identified Gary Longie as the perpetrator in this case. The defense's theory is that this evidence is hearsay not excepted by Federal Rule of Evidence 803(4), the general exception for statements relating to medical diagnosis or treatment. According to the defense, the district court improperly interpreted Rule 803(4) in this case. The defense argues that the victim's statements to Dr. Fahey that she was sexually abused are exceptions to the hearsay rule as valid statements of causation relating to medical diagnosis or treatment. However, the defense contends, the victim's further statements to Dr. Fahey that her father was the abuser are statements of fault which are not within the hearsay exception.

 We disagree. The crucial question is whether the victim's statements identifying her father as the abuser are "reasonably pertinent" to medical diagnosis or treatment. *United States v. Renville*, 779 F.2d 430, 436 (8th Cir.1985). This court has developed a two-part test to answer this question. First, the declarant's motive in making the statement must be consistent with the purpose of promoting treatment; and second, the content of the statement must be such as is reasonably relied on by a doctor in treatment or diagnosis. *Id.; United States v. Iron Shell*, 633 F.2d at 84. This court has held explicitly that "[s]tatements of fault made to a physician by a child who has been sexually abused by a household member meet *Iron Shell's* two-part test and are admissible under Rule 803(4)." *United States v. Shaw*, 824 F.2d 601, 608 (8th Cir.1987), *cert. denied*, 484 U.S. 1068, 108 S.Ct. 1033, 98 L.Ed.2d 997 (1988). The identity of the abuser is particularly important as it affects the physician's treatment and recommendation for counseling. *United States v. Balfany*, 965 F.2d 575, 578 (8th Cir. 1992). The defendant's argument is foreclosed.

### D. Cautionary Instruction As To Crime Not Committed

The indictment in this case charges Gary Longie with criminal sexual conduct involving contact between the penis and the vulva and between the penis and the mouth. The indictment does not charge Longie with criminal sexual conduct involving contact between the penis and the anus. Because there was testimony offered at trial about penis-anus contact, and because that was not a charged offense, the defense requested a special cautionary instruction pointing this out to the jury.

The trial court refused to make the instruction, noting that the verdict form was very specific about the charged activity, and that the testimony about penis-anus contact was properly admissible under Federal Rule of Evidence 404(b). The trial court suggested that defense counsel alert the jury to the distinctions in her closing argument. The defendant argues that the trial court's refusal to grant the instruction was erroneous.

 A defendant is not entitled to a particularly worded instruction and the trial court has considerable discretion in framing the instructions. *United States v. Richmond*, 700 F.2d 1183, 1196 (8th Cir. 1983). Unless the instructions do not adequately present the defendant's theory of the case and lead to prejudice, they should not be disturbed on appeal. *Id.* The instructions given in this case were perfectly adequate to communicate to the jury the defendant's theory of the case. We hold that the trial court did not abuse its discretion by failing to give the instruction suggested by the defense.

### E. Prosecutorial Misconduct

The defendant argues that the prosecutor referred to facts not in evidence and his misconduct mandates a new trial. In his rebuttal summation, the prosecutor stated: "I suspect I can't tell you [that the victim]

told you the whole story on the witness stand.... Maybe we didn't get all the incidents out of her, that's true, but you have got enough to know that this man did what he's accused of."

 A criminal conviction is not to be lightly overturned on the basis of a prosecutor's statements standing alone. *United States v. Young*, 470 U.S. 1, 11, 105 S.Ct. 1038, 1044, 84 L.Ed.2d 1 (1985). The statements must be viewed in context. *Id.* A defendant is not entitled to a perfect trial, but to a fair trial. *United States v. McBride*, 862 F.2d 1316, 1320 (8th Cir. 1988). The trial judge, not an appellate court examining a cold record, can best weigh the possible errors against the record as a whole to determine whether those errors justify a new trial. *Id.* The trial judge determined that the prosecutor's statements were made in the context of explaining the victim's occasional reluctance and difficulty in testifying and were not improper. We will not upset the trial court's decision.

### F. Sufficiency of the Evidence

Finally, the defendant argues that there was insufficient evidence to support his conviction. The defendant correctly points out that the first two incidents that the victim described likely did not take place on the Devils Lake reservation, and therefore the jury could not consider them for the purposes of the federal charges. The defendant contends that the government did not meet its burden of proving the two-count indictment beyond a reasonable doubt based on the testimony about the third incident.

In reviewing the sufficiency of the evidence to support a criminal conviction, this court views the evidence in the light most favorable to the government. *United States v. Newton*, 756 F.2d 53, 54 (8th Cir.1985). We resolve all evidentiary conflicts in favor of the verdict, and accept as established all reasonable inferences that may logically be drawn from the evidence. *Id.* It is not essential for the prosecution to exclude every reasonable hypothesis of guilt. Rather, the evidence

only needs to be sufficient to allow a reasonably minded jury to conclude beyond a reasonable doubt that the defendant committed the offenses charged. *United States v. Rodriguez*, 812 F.2d 414, 416 (8th Cir.1987). Based on our review, we conclude that there was ample evidence to support the guilty verdicts here.

### III.

Accordingly, for the foregoing reasons, we affirm Longie's conviction.