**IT IS HEREBY ORDERED** that Defendant's Motion to Recover Attorneys' Fees and Expenses (Doc. # 92, 108) is **GRANTED.**

**IT IS FURTHER ORDERED** that Plaintiff pay Defendant $84,017.48 in attorney's fees.

**IT IS FURTHER ORDERED** that Plaintiff pay Defendant $23,996.40 in expenses.

2002 D.S.D. 4

**Kermit Oris BEAR STOPS, Petitioner**

v.

**UNITED STATES of America, Respondent.**

**No. CIV.97–3021.**
**No. CR 91–30042.**

United States District Court,
D. South Dakota,
Central Division.

Feb. 27, 2002.

Mikal G. Hanson, Assistant United States Attorney, Pierre, SD, for Plaintiff.

Bruce H. Ellison, Attorney at Law, Rapid City, SD, for Defendant.

## ORDER ADOPTING REPORT AND RECOMMENDATION AND DENYING MOTION TO VACATE, SET ASIDE OR CORRECT SENTENCE

KORNMANN, District Judge.

[¶ 1] Kermit Oris Bear Stops, defendant and petitioner, filed a motion (Doc. 291) pursuant to 28 U.S.C. § 2255 to vacate, set aside or correct his sentence. This Court referred the matter to U.S. Magistrate Judge Mark Moreno pursuant to 28 U.S.C. § 636(b)(1)(B). Judge Moreno caused to be filed on August 18, 2000, his report and recommendations for disposition (Doc. 314). Petitioner filed objections (Doc. 316) on September 7, 2000. The filing of objections would first appear to be too late. Because of irregularities in service and the application of Fed.R.Civ.P. §§ 6(a) and (c), the objections were timely filed. The Court has conducted a *de novo* review of the extensive record. References to the

transcript will be TR followed by the page number.

[¶ 2] Petitioner's motion to vacate is based upon claims of ineffective assistance of trial and appellate counsel. To support a claim of ineffective assistance of counsel, thereby requiring a new trial, a two prong test must be met. First, it must be shown that counsel's performance was deficient, namely that counsel made errors so serious that counsel was not functioning as counsel guaranteed by the Sixth Amendment. Second, it must be shown that the deficient performance prejudiced the defense and that the errors were so serious as to deprive the defendant of a trial whose result is reliable. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 2071, 80 L.Ed.2d 674 (1984).

## I. Severance.

[¶ 3] Petitioner asserts that his trial counsel was ineffective in failing to request a severance of the counts involving P.M. and B.B. and that the evidence involving P.M. "spilled over" to the counts involving B.B., depriving petitioner of a fair trial. Petitioner contends that, at a separate trial, the evidence admitted as to Count I involving P.M. (which conviction was ultimately reversed) would not have been admitted as to Counts II and III involving B.B.[1] Even if petitioner's counsel had requested a severance, there is no guarantee that he would have been granted one or that the evidence concerning the alleged sexual abuse of P.M. would not have been admitted in a separate trial on the counts involving B.B. Rather, it is a virtual certainty that a motion to sever would not have been granted.

The rule governing severance provides that once offenses have been properly joined, the district court may nonetheless order separate trials of the counts "[i]f it appears that a defendant or the government is prejudiced by a joinder of offenses." Fed.R.Crim.P. 14. "The decision to sever is within the sound discretion of the trial judge and the denial of a motion to sever is not subject to reversal absent a showing of real prejudice." *United States v. Patterson,* 20 F.3d 801, 805 (8th Cir.1994) (internal quotations omitted). Prejudice may result from a possibility that the jury might use evidence of one crime to infer guilt on the other or that the jury might cumulate the evidence to find guilt on all crimes when it would not have found guilt if the crimes were considered separately. *Closs v. Leapley,* 18 F.3d 574, 578 (8th Cir.1994). On the other hand, a defendant does not suffer any undue prejudice by a joint trial if the evidence is such that one crime would be probative and admissible at the defendant's separate trial of the other crime. *Robaina,* 39 F.3d at 861.

*United States v. Davis,* 103 F.3d 660, 676 (8th Cir.1996).

[¶ 4] "[A]lleged prejudicial spillover effect of evidence" is "not grounds for severance absent a showing that the jury will be unable to compartmentalize the evidence" as to each separate count. *See United States v. Kime,* 99 F.3d 870, 880 (8th Cir. 1996) (discussing alleged spillover effect on

---

1. On July 9, 1995, Fed.R.Evid. 414 became effective. That rule raises a presumption in favor of admission of evidence of other instances of child molestation. *See* floor statement of the principal house sponsor, Representative Susan Molinari, concerning the prior crimes evidence rules for sexual assault and child molestation cases, Cong. Rec. H8991–92, Aug. 21, 1994. Upon retrial, Rule 414 would be applicable and evidence that P.M. claimed to also have been sexually abused by defendant would almost certainly be admissible. *United States v. LeCompte,* 131 F.3d 767, 769 (8th Cir.1997). It is very doubtful that Fed.R.Evid. 403 would "protect" petitioner.

claim for severance of defendants in conspiracy case). The Eighth Circuit has already ruled in petitioner's direct appeal that "we will not presume that the jury did not properly consider each count independently." *United States v. Bear Stops,* 997 F.2d 451, 459 (8th Cir.1993).

[¶ 5] In evaluating a claim of ineffective assistance of counsel, the petitioner must "overcome a 'strong presumption' that his counsel's actions constituted reasonable trial strategy under the circumstances." *Sanders v. Trickey,* 875 F.2d 205, 207 (8th Cir.1989), (quoting *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065). Petitioner's theory of the defense, as discerned from the trial transcript and from the appellate record, was that he did not commit acts upon either child and there was evidence that someone else committed acts on P.M., thus explaining the evidence of sexual abuse. He argued, successfully, to the Eighth Circuit that he should have been able to submit evidence to the jury of the specifics of a sexual assault upon P.M. by three boys. The Eighth Circuit agreed with petitioner that such evidence would lend credibility to petitioner's claim that someone else was the source of bloody underwear. The conviction concerning sexual abuse of P.M. was reversed. *United States v. Bear Stops,* 997 F.2d at 459.

[¶ 6] Counsel's trial strategy is clear from the record: try to convince the jury that petitioner was truthfully denying sexually abusing B.B. because the evidence strongly suggested that others may have been the source of the evidence of sexual abuse of P.M. Furthermore, petitioner elicited evidence that P.M. was sexually acting out upon B.B., thus explaining B.B's sexual knowledge and symptoms of sexual abuse. (TR 291) Assuming that petitioner was entitled to a separate trial and one was granted, how could petitioner in the case involving B.B. best attempt to defeat the claim of B.B. that petitioner had sexually abused him, taking into account the clear signs of sexual abuse being exhibited by B.B.? The answer was for petitioner to offer evidence in the case involving B.B. that P.M. had been sexually abused by others, causing P.M. to sexually act out on B.B. The trial judge may or may not have allowed these issues as to P.M. to be raised in B.B.'s case. In addition, if they were raised, the door might well have been opened to allow evidence as to P.M. that petitioner had also sexually abused P.M. A joint trial was the safest method for petitioner to explain B.B.'s case with reference to P.M. Petitioner now argues that trial counsel should have moved for a severance to prevent the evidence from the count involving P.M. to spill-over to the counts involving B.B. Petitioner cannot have it both ways. He earlier wanted a joint trial to allow evidence of his credibility on the count involving P.M. to spill-over to bolster his credibility as to the counts involving B.B. Now he argues that his counsel should have moved to sever those counts. Petitioner's assertion of ineffective assistance of counsel in failing to request a severance is contradicted by the record. The record reflects a very reasonable trial strategy in not requesting a severance. Petitioner has not shown that his trial counsel was deficient.

[¶ 7] Assuming for the sake of argument that failure to request a severance was unreasonable, it does not warrant setting aside the judgment if it had no effect upon it. The result of a proceeding can not be determined unreliable without a showing that there is a reasonable probability that the result would have been different but for the alleged error. Specifically, the question is whether there was an undermining of the confidence of the outcome. The ultimate focus of inquiry must be on the fundamental fairness of the proceeding. There are no mechanical stan-

dards to apply. For purposes of the standard of judicial review, it is noted that performance and prejudice components are mixed questions of law and fact. *Strickland, supra.* In order to prevail on his claim that failure to request a severance amounted to ineffective assistance of counsel, petitioner would have to show "clear prejudice." *United States v. Long,* 857 F.2d 436, 443 (8th Cir.1988). "Clear prejudice does not mean merely that a defendant's 'chances for acquittal would have been better' with a separate trial. [H]e must demonstrate that a reasonable jury would have reached a different result in a separate trial, as opposed to a joint trial, because it could not be expected to consider separately the evidence [as to] each [count]." *Id.* (internal citations omitted). The evidence of defendant's guilt on Counts II and III involving B.B. was overwhelming. No exculpatory explanation was apparently available as to why B.B. was accusing petitioner of sexually abusing him and why B.B. was able to consistently describe that sexual abuse to a pediatrician and to a clinical social worker both orally, in drawings, and using anatomically correct dolls. Any "spilling," if it did occur, could not have been unfairly prejudicial because there was more than sufficient evidence to support conviction beyond a reasonable doubt as to the counts involving B.B. Petitioner has not demonstrated that a jury would have reached a different result in a separate trial. Petitioner has failed to meet his burden under the *Strickland* test as it relates to trial counsel's failure to request a severance.

[¶ 8] There is a final reason why counsel need not have moved for a severance. It would have been a futile act. *See* Fed. R.Crim.P. 8(a). Joinder of offenses is proper under Fed.R.Crim.P. 8(a) where the offenses charged "are of the same or similar character or are based upon the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan." "Where the offenses are similar in character, occurred over a relatively short period of time and the evidence overlaps, joinder is ordinarily appropriate." *United States v. Running Horse,* 175 F.3d 635, 637 (8th Cir.1999). Petitioner was charged with aggravated sexual abuse of P.M. in violation of 18 U.S.C. §§ 2241(c) and 2245(2)(A) (count I), aggravated sexual abuse of B.B. in violation of 18 U.S.C. §§ 2241(c) and 2245(2)(A) (count II), and abusive sexual contact with B.B. in violation of 18 U.S.C. §§ 2244(a)(1), 2241(c), and 2245(3) (count III). The offenses were nearly identical in character. The abuse as to P.M. allegedly occurred on April 3, 1988, while the abuse as to B.B. was alleged to have occurred beginning in September of 1989. The seventeen months between the offenses occurred over a "relatively" short period of time. *See United States v. Tyndall,* 263 F.3d 848, 850 (8th Cir.2001) and cases cited therein. While the specifics of the offenses as to each child were different, much of the evidence as to background and relationships, including as to where the children were living at any given time and with whom, overlapped.

[¶ 9] When joinder is proper under Rule 8, the defendant seeking a severance has the burden to demonstrate how a joint trial will prejudice his right to a fair trial. Fed. R.Crim.P. 14, *United States v. Darden,* 70 F.3d 1507, 1527 (8th Cir.1995). "It is not enough simply to show that such joinder makes it more difficult to defend." *Johnson v. United States,* 356 F.2d 680, 682 (8th Cir.1966). "A severance is required only when the proof is such that a jury could not be expected to compartmentalize the evidence as it relates to separate ... counts." *United States v. King,* 803 F.2d 387, 391 (8th Cir.1986). A defendant "has a 'heavy burden' of showing real prejudice." *Id.* The Eighth Circuit pointed out

in petitioner's direct appeal that the evidence as to each child was easy to compartmentalize. *United States v. Bear Stops,* 997 F.2d at 459. Trial counsel was not ineffective for failing to request a severance as petitioner was not entitled to a severance.

[¶ 10] Petitioner objects to the magistrate judge's recommendation that no evidentiary hearing is warranted because petitioner' claims are capable of resolution on the record. The district court must hold an evidentiary hearing on a § 2255 motion which presents factual issues. *United States v. Lambros,* 614 F.2d 179, 181 (8th Cir.1980). However, a § 2255 "petition can be dismissed without a hearing if (1) the petitioner's allegations, accepted as true, would not entitle the petitioner to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible or conclusions rather than statements of fact." *Delgado v. United States,* 162 F.3d 981, 983 (8th Cir.1998) (quoting *Engelen v. United States,* 68 F.3d 238, 240 (8th Cir.1995)). Petitioner asserts that his claim of ineffective assistance of trial counsel based upon counsel's failure to request a severance of the counts involving P.M. and B.B. cannot be determined without an evidentiary hearing. Petitioner's allegation that trial counsel was ineffective in failing to request a severance is contradicted by the record. Further, even if counsel was ineffective in failing to request a severance, petitioner would not be entitled to a new trial. The Court finds that an evidentiary hearing is not necessary to resolve the claims raised in petitioner's § 2255 motion because the files and records in this case conclusively show that he is entitled to no relief on his claim that his trial counsel was ineffective in failing to request a severance.

## II. Limiting Instructions.

[¶ 11] Petitioner objects to the magistrate's findings that trial counsel was not ineffective in failing to request a limiting instruction as to the expert testimony concerning behavioral characteristics of sexually abused children. No such limiting instruction would or should have been given since there was evidence in the record that both P.M. and B.B. exhibited certain behavioral symptoms of sexual abuse. It would have been a useless act to request such a limiting instruction.

[¶ 12] Petitioner objects to the magistrate's findings that trial counsel was not ineffective in failing to request a limiting instruction as to P.M.'s bloody underwear. He also now argues that his counsel should have sought to exclude P.M.'s bloody underwear. This Court cannot fathom what help to petitioner such requests could have been. Clearly, the underwear was P.M.'s and not B.B.'s. Petitioner was allowed to elicit information, although to an impermissibly limited extent, that the child's mother assumed that the bloody underwear was related to three other children's sexual assault upon P.M. It is clear from the record that it was trial strategy to have that information admitted so as to bolster petitioner's credibility that some other person or persons sexually abused P.M. The argument was also advanced that, since P.M. had sexual knowledge from an outside source, P.M. taught B.B. the sexual knowledge that B.B. exhibited. The whole basis for the defense as to B.B.'s claims of sexual abuse was related to P.M.'s supposed sexual abuse at the hands of someone other than petitioner. There would have been no reasonable trial strategy to limit the evidence to only Count I involving P.M. Petitioner has failed to meet his burden under part one of the *Strickland* test as it relates to trial

counsel's failure to request limiting instructions.

## III.   Appellate Counsel.

[¶ 13] Petitioner objects to the magistrate's findings that appellate counsel was not ineffective in failing to raise the issues of the admission of certain hearsay statements, failing to attack counts II and III on appeal, failing to attack the guidelines calculations, and failing to seek a writ of certiorari from the United States Supreme Court.

[¶ 14] Petitioner alleges that various statements made by B.B. and P.M. constituted inadmissible hearsay and that appellate counsel should have raised those issues on appeal. The Eighth Circuit has held that the admission of such testimony does not violate the Confrontation Clause when the alleged child victim actually appears in court and testifies in person:

> The confrontation clause presents an obstacle to admitting hearsay statements only when the child does not testify in the state's case either because of unavailability or by choice of the prosecution. Under *California v. Green*, 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970), when the witness is available to be cross-examined at trial concerning her prior statements, the confrontation clause is not violated by use of such prior statements. And under the recent decision in *United States v. Owens*, 484 U.S. 554, 108 S.Ct. 838, 98 L.Ed.2d 951 (1988), even the failure of the witness to remember the details of the statement would not violate the right.

*United States v. Spotted War Bonnet*, 933 F.2d 1471, 1473 (8th Cir.1991), quoting Mosteller, *Child Sexual Abuse and Statements for the Purpose of Medical Diagnosis or Treatment*, 67 N.C.L.Rev. 257, 286–87 (1989) (footnotes omitted). There is no Confrontation Clause claim advanced because any such claim would have no merit. The victims did testify.

[¶ 15] The admissibility of hearsay statements under the rules of evidence is more problematic. The Court will only consider the admissibility of statements made concerning B.B. since the charge concerning P.M. was reversed by the Eighth Circuit and ultimately dismissed by the government. There is no further relief available to the defendant with regard to the charges concerning P.M.

[¶ 16] Petitioner contends that testimony from a medical doctor and social worker that B.B. told them that petitioner had sexually abused him was inadmissible and that such argument should have been advanced on appeal. Petitioner's trial was held May 19–22, 1992. The law at that time as to the admissibility of statements made to a doctor under Fed.R.Evid. 803(4) required the court to apply a two-part test: "first, the declarant's motive in making the statement must be consistent with the purposes of promoting treatment; and second, the content of the statement must be such as is reasonably relied on by a physician in treatment or diagnosis." *United States v. Renville*, 779 F.2d 430 436 (8th Cir.1985) (on appeal from the United States District Court for the District of South Dakota, the Honorable Donald J. Porter) (citing *United States v. Iron Shell*, 633 F.2d 77, 84 (8th Cir.1980)). The *Iron Shell* test requires foundation for (1) the victim's motive for truthfulness and (2) the physician's reliance on the history elicited from the victim. *Iron Shell* stated in dicta that statements identifying the identity of the perpetrator "would seldom, if ever, be sufficiently related" to diagnosis and treatment. *Iron Shell*, 633 F.2d at 84. The *Renville* court held that "physicians have an obligation, imposed by state law, to prevent an abused child from being returned to an environment in which he or

she cannot be adequately protected from recurrent abuse ... Information that the abuser is a member of the household is therefore, 'reasonably pertinent' to a course of treatment which includes removing the child from the home." *Renville,* 779 F.2d at 438. The court in *Renville* went on to hold that statements of identity meet the first part of the *Iron Shell* test "where the physician makes clear to the victim that the inquiry into the identity of the abuser is important to diagnosis and treatment, and the victim manifests such an understanding." *Renville,* 779 F.2d at 438.

[¶ 17] In 1989, the Eighth Circuit again analyzed the admissibility of statements identifying the perpetrator under Rule 803(4). In *United States v. Provost,* 875 F.2d 172, 177 (8th Cir.1989) (on appeal from the United States District Court for the District of South Dakota, the Honorable Donald J. Porter), the Eighth Circuit held that where the identity of the assailant as a family member was relevant to diagnosis and treatment, the medical records hearsay exception was applicable. The *Provost* panel did not discuss the first part of the *Iron Shell* test.

[¶ 18] On May 13, 1992, (six days before petitioner's trial) the Eighth Circuit seemed to weaken *Renville* when it held that statements made to a physician were admissible "where such statements were reasonably pertinent to the diagnosis and treatment of the child's physical or psychological injuries." *United States v. Balfany,* 965 F.2d 575, 579 (8th Cir.1992) (on appeal from the United States District Court for the District of South Dakota, the Honorable Donald J. Porter). As the trial court judge, Judge Porter would or should have been given a copy of the *Balfany* opinion before it was released and would have been aware of the law stated therein. The Eighth Circuit explained that since the doctor explained why the victim's his-

tory, "including the identity of her assailant, was pertinent to his diagnosis and recommended treatment" such hearsay statements were admissible. *Id.* at 580. The *Balfany* court did not require evidence that the "physician makes clear to the victim that the inquiry into the identity of the abuser is important to diagnosis and treatment, and the victim manifests such an understanding" as required in *Renville,* 779 F.2d at 438.

[¶ 19] The motive requirement of the first part of the *Iron Shell* test was subsequently addressed in *Ring v. Erickson,* 983 F.2d 818 (8th Cir.1992). In that case, the petitioner challenged statements made by a three year old child to a doctor. *Ring* was a Confrontation Clause claim but since the "adequate indicia of reliability" requirement of the Confrontation Clause can be satisfied by showing the hearsay statement "falls within a firmly rooted hearsay exception," the challenged statement was analyzed under Fed.R.Evid. 803(4). *Ring v. Erickson,* 983 F.2d at 820. The Eighth Circuit held that where there was no evidence that the child knew she was talking to a doctor, a selfish motive (i.e. a person seeking medical treatment knows it is in the person's best interest to not lie to the physician) was not established and the statement was inadmissible under Rule 803(4). *Id.*

[¶ 20] The Eighth Circuit reaffirmed the *Iron Shell* test in *United States v. Longie,* 984 F.2d 955 (8th Cir.1993). The Court stated, without any reference to the record, that:

> This court has held explicitly that "[s]tatements of fault made to a physician by a child who has been sexually abused by a household member meet *Iron Shell's* two-part test and are admissible under Rule 803(4)."

*Longie,* 984 F.2d at 959 (quoting *United States v. Shaw,* 824 F.2d 601, 608 (8th

Cir.1987)). Therefore, the Eighth Circuit held that Longie's argument (that the victim's statements to the doctor that her father was the abuser are not within the hearsay exception) is foreclosed. *Id.*

[¶ 21] However, in another opinion issued that same year, the Eighth Circuit held:

> In cases involving very young children, who do not seek medical treatment by themselves but instead are brought to the physician by someone else, there must be evidence that the child understood the physician's role in order to trigger the motivation to provide truthful information. The child does not necessarily have to testify; for instance, [the doctor] can testify that his role was explained to [the victim] and that she understood it.

*United States v. Barrett,* 8 F.3d 1296, 1300 (8th Cir.1993) (citing *Ring v. Erickson,* 983 F.2d 818, 820 n. 2 (8th Cir.1992)). The *Barrett* panel declined to analyze the matter further since the case was being remanded on other grounds.

[¶ 22] The Eighth Circuit did analyze the matter further in a subsequent 1993 decision, *United States v. White,* 11 F.3d 1446 (8th Cir.1993).

> The Government must, of course, still satisfy the subjective standard of *Ring:* it must show that [the victim] understood that he was speaking to a trained professional for the purposes of obtaining diagnosis of, or providing treatment for, emotional or psychological injuries ... There is nothing in the record to suggest that [the victim] appreciated that it was in his best interests to tell the truth and was therefore unlikely to lie. How [the trained social worker or psychologist] explained her role and purpose to [the victim], how she asked him questions, and how and where she conducted the interview are matters that can provide evidence "that the child understood the physician's [or therapist's]

role in order to trigger the motivation to provide truthful information."

*United States v. White,* 11 F.3d at 1449–50 (quoting *United States v. Barrett,* 8 F.3d at 1300).

[¶ 23] The Eighth Circuit has more recently recognized *Renville*'s requirement that "the physician makes clear to the victim that the inquiry into the identity of the abuser is important to diagnosis and treatment, and the victim manifests such an understanding" in *Olesen v. Class,* 164 F.3d 1096, 1098 (8th Cir.1999) (on appeal from the United States District Court for the District of South Dakota, the Honorable Charles B. Kornmann). Thus, the prosecution must establish that the victim's "frame of mind at the time of [the doctor's] examination was that of a patient seeking medical treatment." *Id.* Where the prosecution fails to establish the victim's "strong motive to tell the truth to [the doctor] in order to promote treatment," the victim's statement to the doctor is not properly admitted. *Id.*

[¶ 24] Dr. Paul Bernhardson, a pediatrician, testified at petitioner's trial that taking a history from a child is important for medical diagnosis and treatment. (TR 213) He also testified that the identity of the perpetrator is important in evaluating and treating the patient. (TR 214) Trial counsel objected to Dr. Bernhardson's testimony concerning the history given by B.B. (TR 214) Judge Porter overruled defense counsel's objection without further comment. Dr. Bernhardson then testified that B.B. told him that B.B.'s step father had sexually abused him. (TR 214–15)

[¶ 25] Dr. Bernhardson's testimony came in after considerable discussion concerning the admissibility of hearsay statements made by P.M. to Dr. Peter C. Peterson, a clinical psychologist. Dr. Peterson earlier testified that statements that a child makes are important in evaluating and

treating the patient. (TR 159) He also testified that the identity of the alleged perpetrator is important in the evaluation and treatment of a patient. (TR 159) He went on to testify to statements P.M. made to him about the abuse P.M. suffered at the hands of petitioner. (TR 159–170) Judge Porter evaluated the admissibility of Dr. Peterson's statements at a sidebar conference under Fed.R.Evid. 803(4), the medical exception to the hearsay rule. (TR 161–163) Judge Porter admitted Dr. Peterson's testimony that P.M. identified petitioner as his abuser after the prosecutor elicited testimony from Dr. Peterson that the identity of the abuser was background information pertinent to his diagnosis and treatment. No additional discussion occurred when defendant later objected to Dr. Bernhardson's testimony regarding the history taken from B.B. However, the prosecution also established the foundation from Dr. Bernhardson that the identity of the abuser is pertinent to his diagnosis and treatment.

[¶ 26] Debra Baune, a trained clinical social worker, testified that she requires information from the child as to what happened and the identity of the alleged perpetrator in order to evaluate whether there was trauma, the degree of trauma, and the kind of therapy necessary for treatment. (TR 121–23) She testified that B.B. told her that his dad had touched his butt "and put his pee pee where my caca comes out." (T 128) Such statements "made by a child to a trained social worker or psychologist pursuant to diagnosis or treatment for emotional or psychological injuries are admissible under Rule 803(4)." *United States v. Balfany*, 965 F.2d at 581. Baune's statements came in before Dr. Peterson's and Dr. Bernhardson's testimony.

[¶ 27] The record is clear that Judge Porter admitted the evidence that B.B. identified to his physician and the clinical social worker that the petitioner was his abuser, this being based upon the physician's and clinical social worker's testimony that such background information was pertinent to diagnosis and treatment. Such a result was consistent with the Eighth Circuit's then most recent discussion of the issue in *Balfany*. Such a result was not consistent with *Renville*. There was no direct evidence that B.B. knew that the identity of his abuser was important to Dr. Bernhardson's or Debra Baune's diagnosis and treatment and there was no evidence that B.B. manifested such an understanding.

[¶ 28] In *United States v. White*, the Eighth Circuit suggested that the government may satisfy the motive requirement through less direct evidence.

> How [the physician or therapist] explained her role and purpose to [the victim], how she asked him questions, and how and where she conducted the interview are matters that can provide evidence "that the child understood the physician's [or therapist's] role in order to trigger the motivation to provide truthful information."

*United States v. White*, 11 F.3d at 1450 (quoting *United States v. Barrett*, 8 F.3d at 1300).

[¶ 29] Debra Baune did one assessment of B.B. to determine whether there was trauma, the degree of trauma, the treatment needs of B.B. and his family, and her recommendation for treatment. (TR 121) The appointment was arranged by the F.B.I. (TR 121) The interview took place in Baune's office which was described as a "kid friendly office" with a toy box, puppets, trucks, cars, dolls, markers and paper, mobiles and pictures on the wall. (TR 123) The trial testimony shows that Baune asked B.B. open ended questions and that B.B. responded spontaneously and consistently throughout the interview. While these facts may demonstrate a degree of

trustworthiness in the statements, these facts do not provide evidence that B.B. would have been motivated to tell the truth, which is the requirement of *Renville* and its progeny. Similarly, Dr. Bernhardson's examination of B.B. occurred in his medical clinic. (TR 212) The taking of the history (wherein B.B. identified petitioner as his abuser) occurred prior to the physical examination. (TR 221) Again, there is no evidence as suggested by *White* which would satisfy the motive requirement. The testimony would have been inadmissible under *Renville*.

■ [¶ 30] Although the statements were inadmissible under Fed.R.Evid. 803(4), they may nonetheless have been admissible under Rule 803(24), the so-called catch-all exception. In determining whether B.B.'s statements were admissible under Rule 803(24), "we examine [their] trustworthiness in light of the totality of the circumstances that surrounded [their] making, without regard to other evidence in the record that might corroborate the statement[s]." *Olesen v. Class,* 164 F.3d at 1098 (a Confrontation Clause case). Children's statements may be found trustworthy where they "provided graphic, detailed descriptions of the alleged abuse, thereby lending credibility to their statements identifying their abusers." *Id.* at 1099. Statements to a family member identifying the abuser are also evaluated under the residual hearsay rule, Rule 803(24). *United States v. Balfany,* 965 F.2d at 581. Thus, the challenged trial testimony of TM (the mother of the children) should be evaluated along with the testimony of Bernhardson and Baune under this exception.

■ [¶ 31] Five criteria must be satisfied in order for statements to be admissible under Fed.R.Evid. 803(24):

(1) The statement must have circumstantial guarantees of trustworthiness

equivalent to the twenty-three specified exceptions listed in rule 803;

(2) The statement must be offered as evidence of a material fact;

(3) The statement must be more probative on the point for which it is offered than any other evidence the proponent can procure through reasonable efforts;

(4) The general purposes of the Federal Rules and the interest of justice must best be served by the admission of the statement into evidence;

(5) The proponent of the evidence must give the adverse party the notice specified within the rule.

*United States v. Balfany,* 965 F.2d at 581, *United States v. NB,* 59 F.3d 771, 775–76 (8th Cir.1995). No such analysis was done in this case as to B.B.'s statements to his mother, TM, or B.B.'s statements to Bernhardson and Baune. Since B.B. testified as to the elements of the offense, the requirement in numbered paragraph (3) above could not be satisfied. This court has read the transcripts of TM's testimony and finds rather tangential references to statements made by B.B. She did answer "Yes" to the question, "Now, did [B.B] ever talk to you about being abused by the defendant?" (TR 276) She also testified that B.B. had nightmares that his dad "was going to get him." (TR 279) Any such statements would not be admissible in the absence of satisfying all five factors required by Fed.R.Evid. 803(24). Any such statements were cumulative of the testimony of Bernhardson and Baune. *See United States v. Balfany,* 965 F.2d at 582. However, the challenged testimony of Bernhardson and Baune was inadmissible under Rule 803(24).

■ [¶ 32] The proper standard for evaluating petitioner's claim that appellate counsel was ineffective in neglecting to appeal the foregoing evidentiary issues "is that enunciated in *Strickland v. Washing-*

ton, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)." *Smith v. Robbins*, 528 U.S. 259, 285, 120 S.Ct. 746, 764, 145 L.Ed.2d 756 (2000) (whether appellate counsel was ineffective for filing *Anders* brief only rather than arguing the merits of the appeal).

> [Petitioner] must first show that his counsel was objectively unreasonable ... in failing to find arguable issues to appeal—that is, that counsel unreasonably failed to discover nonfrivolous issues and to file a merits brief raising them. If [petitioner] succeeds in such a showing, he then has the burden of demonstrating prejudice. That is, he must show a reasonable probability that, but for his counsel's unreasonable failure to file a merits brief, he would have prevailed on his appeal.

*Smith v. Robbins*, 528 U.S. at 285, 120 S.Ct. at 764 (citations omitted).

> In *Jones v. Barnes*, 463 U.S. 745, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983), we held that appellate counsel who files a merits brief need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal. Notwithstanding *Barnes*, it is still possible to bring a *Strickland* claim based on counsel's failure to raise a particular claim, but it is difficult to demonstrate that counsel was incompetent. *See, e.g., Gray v. Greer*, 800 F.2d 644, 646 (C.A.7 1986) ("Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome").

*Smith v. Robbins*, 528 U.S. at 288, 120 S.Ct. at 765.

[¶ 33] Petitioner's appellate counsel appealed Count I as to P.M. based upon the failure to admit Rule 412 evidence of the sexual abuse of P.M. committed by persons other than petitioner. The conviction on Count I was ultimately reversed based upon this argument. *United States v. Bear Stops*, 997 F.2d at 458. Such evidence was "constitutionally required." Petitioner's appellate counsel appealed Counts II and III as to B.B. based upon the failure to admit evidence of sexual contact between P.M. and B.B. that was offered to prove an alternative source of B.B.'s sexual knowledge and based upon the "spill-over argument" previously addressed herein. The Eighth Circuit rejected these arguments. *United States v. Bear Stops*, 997 F.2d at 459. This Court must determine whether the evidentiary issues discussed herein are clearly stronger than those which were presented in order to overcome the presumption that appellate counsel was ineffective.

[¶ 34] The law in the Eighth Circuit at the time of petitioner's conviction was confusing at best as to the admission of statements to a health care provider which identify the sexual perpetrator. Although *Renville* (Lay, Gibson and Phillips) (1995) required a two-part analysis of the admissibility of hearsay statements under Fed. R.Evid. 803(4), *Provost* (Arnold, Magill and Ross) (1989) and *Balfany* (Beam, Heaney and Loken) (1992) required only a one part test, which test was met when the government laid the foundation that the identity of the abuser was important to diagnosis and treatment. Six weeks before the petitioner's case was submitted to the Eighth Circuit, the Court held in *Ring v. Erickson* (Richard S. Arnold, Lay and Heaney) (1993) that where there was no evidence that the victim knew she was talking to a doctor, selfish motive was not established and the statement was inadmissible under Rule 803(4). A further analysis of *Renville* was issued in *Longie* less than three weeks before petitioner's appeal was submitted to the Eighth Circuit. *Longie* (McMillian, Magill and Hansen) (1993) suggests that "[s]tatements of

fault made to a physician by a child who has been sexually abused by a household member" automatically meet the two-part test, thereby foreclosing any claim that such hearsay statements are inadmissible. The law at the time petitioner's conviction was appealed and submitted to the Eighth Circuit did not clearly support petitioner's claim that such evidence was clearly inadmissible under the circumstances present in petitioner's trial. Appellate counsel was therefore not ineffective in failing to raise the issue on appeal.

[¶ 35] Assuming arguendo that appellate counsel was ineffective for failing to raise the hearsay issues on appeal, the prejudice analysis under *Strickland* would be applicable. *Smith v. Robbins*, 528 U.S. at 288, 120 S.Ct. at 766. Petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068.

[¶ 36] Petitioner would have been entitled to reversal of his conviction on direct appeal only if he could have shown that the error in admitting the hearsay testimony was not harmless. *See Balfany*, 965 F.2d at 582. Petitioner was charged with engaging in a sexual act and having sexual contact with B.B. on or about from September 6, 1989, through March 16, 1990, in Red Scaffold, South Dakota. B.B., who at the time of trial was six years old, testified that "my dad," who was in court that day, touched B.B.'s "butt" with his "pee pee" at B.B.'s grandmother's house in Red Scaffold, South Dakota. (TR 93–95) He also testified that no one other than his dad had done this to him. (TR 102) The facts that B.B. was at his grandmother's house and that the petitioner had access to him

during the time alleged in the indictment were substantiated by other witnesses. The fact that B.B. referred to petitioner as his dad was also established through other witnesses. Baune testified that B.B. (who was five years old at the time of the interview in May of 1991 [2] (TR 121, 127)) stated that his dad's name is Oris. (TR 125) She also testified that B.B. identified his penis as his "pee pee" and identified his other private part as his "butt." (TR 127) She also testified that "caca" referred to "poop." (TR 128) Aside from Baune's testimony as to the identity of the abuser, she did testify to the admissible facts that B.B. described his abuser's penis as hard and made a painful face when describing how the abuse felt. (TR 128) She went on to testify that B.B. identified the penis on a drawing of a man as what was used to touch his anal opening and that B.B. drew a big hand and stated that it was this body part that was used to touch his (B.B.'s) penis. (TR 129) Baune testified that, when using anatomically correct dolls, B.B. identified the male child doll as himself and the male adult doll as his father. He then inserted the penis of the male adult doll into the anal opening of the male child doll and then started "whacking" the male adult doll. (TR 131) Baune testified that B.B. told her that the abuse had occurred in the living room in a house in Red Scaffold when he was attending Head Start. (TR 135–136) B.B. used three different media to describe how he had been sexually abused by penetration of his anus by another's penis. Such a consistent response could not be achieved from a child of that age who had been coached. (TR 140–141)

[¶ 37] Dr. Bernhardson testified that he interviewed B.B. in July of 1991 (16 months after the time period alleged in the indictment). (TR 212) He testified that

---

**2.** B.B. was born in December of 1985. (TR 212)

B.B. told him that he had been sexually abused, that his abuser touched B.B.'s private parts, and that he had been told to keep it a secret. (TR 214–215)

[¶ 38] TM, B.B.'s mother, testified that B.B. attended Head Start and kindergarten in Red Scaffold on the Cheyenne River Indian Reservation where she and the children lived with petitioner. (TR 263, 270) B.B. was four years old when he attended Head Start. (TR 270). She also testified that at times the petitioner was alone with B.B. (TR 294) B.B. was enrolled in the Cheyenne River Head Start Program from September 6, 1989, through March of 1990. (TR 367) She testified on cross-examination that she was working during the time B.B. was enrolled in Head Start and that he would ride the bus home from school. (TR 465–466) She testified that she would not be home when B.B. got off the bus and that there were times when petitioner was home alone with B.B. (TR 465–467)

[¶ 39] DC, the petitioner's sister, testified that B.B. is petitioner's son and that B.B. did not have another father. (TR 563) Petitioner himself testified that he was, or at least always thought he was, B.B.'s father. (TR 668) Petitioner testified that B.B. lived with him (and B.B.'s mother and little sister) in a house in Red Scaffold during the time period alleged in the indictment. (TR 670, 679–681) B.B. was in Head Start during that time period. (TR 681) There was no evidence at all that there was any other man that B.B. identified as his father or dad. There was no evidence that B.B. was lying or told a contrary story at any other time. There was no evidence of a motive to fabricate, either on the part of B.B. or his mother.

[¶ 40] The evidence was very convincing that B.B. was sexually abused by an adult male. B.B testified that petitioner was his abuser. There was no evidence to the contrary, other than petitioner's testimony that he did not "rape" B.B. or "touch

[B.B.'s] private parts, either to sexually arouse [himself] or to humiliate him." (TR 682–83)

[¶ 41] The error in admitting the hearsay statements was harmless in the face of the overwhelming admissible evidence that petitioner sexually abused B.B.

[¶ 42] The court agrees with the magistrate's findings of fact and conclusions of law regarding appellate counsel's failure to challenge on appeal the convictions on counts II and III based upon sufficiency of the evidence. The evidence was overwhelming that petitioner sexually abused B.B. Counsel was not required to assert frivolous claims of insufficient evidence. The only possibly reasonable attack on Counts II and III was to attack the failure to admit evidence under Count I which could have boosted petitioner's credibility and spilled over to Counts II and III. That claim was rejected by the Eighth Circuit. Petitioner argued to the Eighth Circuit that the failure to admit such evidence spilled over to the counts involving B.B. Petitioner's claim was that the jury was more likely to believe that he did not commit the acts on B.B. if they could have believed that he did not commit the acts on P.M. (because someone else may have been responsible for the sexual abuse of P.M.). The Eighth Circuit rejected that spill-over argument.

[¶ 43] The magistrate determined that the issue of spill-over had preclusively been addressed by the Eighth Circuit. Petitioner contends that the Eighth Circuit failed to grasp the intent of his spill-over argument, that appellate counsel failed to effectively advance the spill-over argument, and that the magistrate failed to address the merits of the issue. However, having read the brief submitted by the petitioner and the Eighth Circuit's opinion, it is clear that the argument was advanced by appellate counsel in the same manner

that petitioner advances the argument in this proceeding: credibility was important as to both counts and if the jury could have believed that petitioner was credibly denying sexually abusing P.M., they would also have believed that he was credibly denying sexually abusing B.B. The district court excluded evidence which could have provided an alternative explanation for P.M.'s bloody underwear and symptoms of sexual abuse. The district court did not exclude any such evidence as to Counts II and III involving B.B. No such evidence was proffered as to those two counts. Even if the jury would have believed petitioner's denial as to P.M. based upon an alternate cause, there was simply no other explanation as to why B.B. so convincingly accused petitioner of sexually abusing him. Even with the inclusion of the evidence that some other person or persons sexually abused P.M., that does not preclude a finding that petitioner also sexually abused P.M. The objections with regard to the spill-over issue should be denied and the magistrate's recommendation should be adopted.

[¶ 44] The court agrees with the magistrate's conclusions that petitioner has failed to set forth any specifics as to how appellate counsel should have attacked the guidelines calculations. Finally, the Court agrees with the magistrate's conclusion that appellate counsel cannot be ineffective by failing to seek a discretionary writ of certiorari.

[¶ 45] Now, therefore,

[¶ 46] IT IS ORDERED:

1. The report and recommendation (Doc. 314) is accepted and adopted *in toto*.

2. The petitioner's objections (Doc. 316) are overruled.

2. The motion (Doc. 291) to vacate, set aside or correct sentence and the supplement (Doc. 310) thereto are denied and this matter is dismissed with prejudice. [¶ 47] Dated this 27th day of February, 2002.

## REPORT AND RECOMMENDATIONS FOR DISPOSITION OF MOTION TO VACATE, SET ASIDE OR CORRECT SENTENCE

MORENO, United States Magistrate Judge.

### I.

[¶ 1] The above-captioned 28 U.S.C. § 2255 matter was referred to this Court by the District Court[1] pursuant to 28 U.S.C. § 636(b)(1)(B), for purposes of issuing any orders under Rule 4 of the Rules Governing Section 2255 Proceedings (§ 2255 Rules), conducting evidentiary hearings, and submitting proposed findings of fact and recommendations for disposition of the matter.

[¶ 2] Having carefully reviewed and considered all of the records on file and being fully advised in the premises, this Court does now make and propose the following findings of fact, report and recommendations for disposition.

### II.

[¶ 3] Defendant, Kermit Oris Bear Stops (Bear Stops), an Indian, was indicted in August, 1991 on two counts of aggravated sexual abuse, 18 U.S.C. §§ 2241(c) and 2245(2)(A), and one count of aggravated sexual contact, 18 U.S.C. §§ 2244(a)(1), 2241(c) and 2245(3). Count I charged Bear Stops with sexually abusing P.M., a six-year-old boy, by having penile/anal contact with the child on or about April 3, 1988 at Red Scaffold on the Cheyenne River Indian Reservation in South Dakota. Bear Stops was charged in Counts II and

---

1. The Honorable Charles B. Kornmann, United States District Judge, presiding.

III with sexually abusing his four-year-old "son", B.B.[2], (again through penile/anal contact) and with intentionally touching the boy's genitalia, groin, anus and/or inner thigh between the time period of September 6, 1988 and March 16, 1990 at Red Scaffold. On May 28, 1992, a jury found Bear Stops guilty of all three Counts. The trial court thereafter denied Bear Stops' post-trial motions and sentenced him to 276 months of imprisonment.

[¶ 4] Subsequently, Bear Stops appealed his convictions. The Eighth Circuit Court of Appeals affirmed the trial court's judgment as to Counts II and III but reversed the judgment on Count I and remanded the case for further proceedings. The Eighth Circuit's decision is reported at *United States v. Bear Stops*, 997 F.2d 451 (8th Cir.1993). Plaintiff, United States of America, (government) later dismissed Count I of the indictment and the trial court resentenced Bear Stops to a 220 month prison term on Counts II and III.

[¶ 5] Three and one-half years later, Bear Stops filed a Motion under § 2255 to vacate, set aside or correct his sentence. The District Court initially denied Bear Stops' Motion on limitations grounds but, upon reconsideration, determined that the Motion was timely based on the Eighth Circuit's intervening *en banc* decision in *Nichols v. Bowersox*, 172 F.3d 1068 (8th Cir.1999)[3] and referred the matter to this Court.

[¶ 6] Thereafter, Bear Stops was given leave to supplement his Motion and has done so. The government has filed responses contesting the allegations raised by Bear Stops and resisting the relief prayed for in both the Motion and supplement thereto.

### III.

[¶ 7] Bear Stops cohabitated with Tamara Moore and her son, P.M., intermittently for approximately five years between 1984 and February, 1990. During this time, B.B. was born. Depending upon the state of her relationship with Bear Stops, Moore and her children, P.M., B.B. and younger daughter, S.B., lived either in Fort Yates, North Dakota, where her parents dwelled, or in the Red Scaffold/Cherry Creek area where Bear Stops' family resided.

[¶ 8] In September, 1989, P.M. went to live with his maternal grandparents in Fort Yates because of difficulties he was having with Bear Stops. On one occasion, while doing dishes by the sink with his grandmother, P.M. told her that he had been sexually abused by Bear Stops. This information was relayed to Moore who confronted Bear Stops with it. A fight ensued and Moore left Bear Stops, taking B.B. with her, and went to stay at a womens' shelter in Eagle Butte, South Dakota. Once separated from Bear Stops, B.B. told Moore that Bear Stops had sexually abused him as well.

[¶ 9] At trial, the government called P.M., Moore, both grandparents, a psychologist, social workers, an elementary school counselor and an FBI agent to prove the initial Count of the indictment. Expert testimony was adduced concerning the behavioral characteristics of sexually abused children. Bear Stops denied that he had sexual contact with P.M., presented an alibi defense, offered testimony that contradicted P.M.'s version of the assault, and attempted to introduce evidence that P.M. had earlier been sexually assaulted by three other persons. The trial court, for the most part, excluded the proffered evidence of P.M.'s prior sexual assaults.

[¶ 10]As for the remaining two Counts, the government called B.B., Moore, a social worker and a pediatrician as witnesses at

---

**2.** Bear Stops is not actually B.B.'s father, T.Tr. 261, but did not know this to be the case until the trial began, *id.* at 667–68.

**3.** *See also, Moore v. United States*, 173 F.3d 1131 (8th Cir.1999) (making clear that the rule in *Nichols* applies with equal force to § 2255 cases).

trial. The expert testimony presented, describing the symptoms exhibited by child victims of sexual abuse, also pertained to the two offenses involving B.B. Bear Stops denied any wrongdoing with respect to B.B.

[¶ 11]Additional facts will be referred to as they arise in and relate to the discussion of Bear Stops' claims. These claims are addressed in turn below.

## IV.

[¶ 12]Bear Stops requests that this Court grant him an evidentiary hearing on his Motion. R. 291 at 26. An evidentiary hearing, however, need not be held (1) if the defendant's allegations, accepted as true, would not entitle him to relief; or (2) if the allegations cannot be accepted as true because they are contradicted by the record, are inherently incredible or conclusions rather than statements of fact. *Delgado v. United States,* 162 F.3d 981, 983 (8th Cir.1998) (*quoting Engelen v. United States,* 68 F.3d 238, 240 (8th Cir.1995)). Likewise, an evidentiary hearing is not required "where the files and records of the case conclusively show that the [defendant] is not entitled to relief." *Standing Bear v. United States,* 68 F.3d 271, 272 (8th Cir.1995), *cert. denied,* 517 U.S. 1147, 116 S.Ct. 1444, 134 L.Ed.2d 564 (1996); *United States v. Duke,* 50 F.3d 571, 576 (8th Cir.), *cert. denied,* 516 U.S. 885, 116 S.Ct. 224, 133 L.Ed.2d 154 (1995); *see also, Holloway v. United States,* 960 F.2d 1348, 1351 (8th Cir.1992); *United States v. Schmitz,* 887 F.2d 843, 844 (8th Cir.1989) (citations omitted).

[¶ 13]Bear Stops' claims are ones that are capable of resolution from the record. *See Blankenship v. United States,* 159 F.3d 336, 337–39 (8th Cir.1998), *cert. denied,* 525 U.S. 1090, 119 S.Ct. 844, 142 L.Ed.2d 699 (1999); *Rogers v. United States,* 1 F.3d 697, 699 (8th Cir.1993); *see also, United States v. Raddatz,* 447 U.S. 667, 675, 100

S.Ct. 2406, 65 L.Ed.2d 424 (1980); *Dall v. United States,* 957 F.2d 571, 572 (8th Cir. 1992); *see generally, United States v. Apker,* 174 F.3d 934, 937–41 (8th Cir.1999) (wherein the clarity of the existing record made an evidentiary hearing unnecessary). After close scrutiny of the record, this Court is convinced that Bear Stops is not entitled to relief. *See Duke,* 50 F.3d at 576; *Cheek v. United States,* 858 F.2d 1330, 1333 (8th Cir.1988); *see also, Bradshaw v. United States,* 153 F.3d 704, 708 (8th Cir.1998).

## V.

[¶ 14] Bear Stops contends that the exclusion of evidence relating to Count I and P.M. violated his rights under the Confrontation Clause and to a fair trial and "spilled over" to and abrogated the convictions obtained on Counts II and III of the indictment. R. 291 at 9–14, 310 at 10–14.

[¶ 15]Bear Stops' contention was passed on and rejected by the Eighth Circuit. On direct appeal, the Appeals Court reversed Bear Stops' conviction on Count I, concluding that the trial court erred in excluding evidence of P.M.'s behavioral manifestations and of his assault by three other boys. The Court, however, determined that these evidentiary errors did not "spill over" and vitiate the remaining two Counts involving B.B. In addressing this point, the Court observed as follows:

Finally, Bear Stops argues that the alleged evidentiary errors directly pertaining to count I involving P.M. as the victim "spilled-over" to infect counts II and III, the counts involving the younger child, B.B. Because Bear Stops denies that he sexually abused either P.M. or B.B., his credibility is involved in all three counts. Therefore, Bear Stops asserts that the alleged errors directly involving count I also affect counts II

and III because his credibility was impeached. We disagree.

The alleged errors in question all involved actual and alleged incidences of sexual abuse of P.M. Therefore, as Bear Stops appears to concede, these evidentiary issues are unique to P.M. and have no relevance to the counts involving B.B. beyond the general credibility of Bears Stops. We find the counts involving B.B. to be quite different from the one involving P.M. and the case against Bear Stops to be much stronger. Unlike with respect to P.M., there was no evidence of prior sexual abuse of B.B. (and no sexual experience beyond P.M. acting out sexually toward B.B.), and therefore, no valid basis existed to support an alternative explanation for why B.B. exhibited symptoms of a child who has been sexually abused. For the same reasons, any argument explaining an alternative source for B.B.'s sexual knowledge would be tenuous at best. There appeared to be no question that B.B. was able to identify his father with whom he had lived for approximately the first five years of his life. B.B.'s description of the alleged incidents with Bear Stops was consistent regardless of whether it was oral, acted out with anatomically correct dolls, or with pictures drawn on paper. B.B.'s allegation, the investigation of his allegations, and his treatment occurred largely in South Dakota while P.M. was in North Dakota. Counts II and III involve a different victim and occurred at different times than involved in count I, and we will not presume that the jury did not properly consider each count independently.

997 F.2d at 459 (citations omitted).

[¶ 16]Bear Stops acknowledges, and the record indicates, that he filed a petition for rehearing, asserting that the Eighth Circuit had misconstrued his "spill-over" argument, and that his petition was denied. R. 273, 310 at 13. Having unsuccessfully raised his "spill-over" contention on direct appeal, Bear Stops cannot now seek to relitigate the contention on a motion to vacate pursuant to § 2255. *Dall,* 957 F.2d at 572; *United States v. Sanders,* 723 F.2d 34, 36 (8th Cir.1983); *United States v. Shabazz,* 657 F.2d 189, 190 (8th Cir.1981); *see also, United States v. Eagle Thunder,* 873 F.Supp. 1362, 1372 (D.S.D.), *aff'd,* 51 F.3d 278, 1994 WL 776941 (8th Cir.1994), *cert. denied,* 514 U.S. 1076, 115 S.Ct. 1721, 131 L.Ed.2d 580 (1995). The fact that the Court of Appeals reviewed Bear Stops' contention in the context of a mistrial motion is of little, if any, significance. In this Court's view, the Eighth Circuit's holding is dispositive of the "spill-over" issue and, in and of itself, defeats his contention.

## VI.

[¶ 17]A defendant asserting that he was denied his constitutionally guaranteed right to effective assistance of counsel faces a dual burden:

First, the defendant must show that counsel's performance was deficient. This requires a showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defendant. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

[¶ 18]To establish ineffectiveness, the defendant must demonstrate that "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688, 104 S.Ct. 2052. To establish prejudice, he "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceed-

ing would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S.Ct. 2052.

[¶ 19]Recently, the United States Supreme Court reaffirmed that the *Strickland* test was the proper one for resolving ineffective assistance claims, *see Williams v. Taylor,* 529 U.S. 362, 390–99, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000), including those made against appellate counsel, *see Roe v. Flores–Ortega,* 528 U.S. 470, 476–87, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000); *Smith v. Robbins,* 528 U.S. 259, 285–89, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000). The Supreme Court in *Williams* determined that a state court had erred in holding that the Court's decision in *Lockhart v. Fretwell,* 506 U.S. 364, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993) modified or in some way supplanted the rule set down in *Strickland.* 529 U.S. at 391–95, 120 S.Ct. 1495. In doing so, the Court made clear that *Lockhart* did not carve out an exception to the *Strickland* analysis and that the prejudice inquiry under *Strickland* remained unchanged. 529 U.S. at 396–99, 120 S.Ct. 1495.

[¶ 20]Applying these precepts to the instant case leads inescapably to the conclusion that Bear Stops has failed to meet the rigid standards of *Strickland* and therefore cannot prevail on or obtain § 2255 relief for his ineffectiveness claims.

### A.

[¶ 21]Bear Stops first claims that he received ineffective assistance because his trial counsel failed to request limiting jury instructions. R.291 at 18–21, 310 at 15.

Specifically, he argues that counsel should have asked that the jury be instructed, pursuant to Fed.R.Evid. 105, to limit its consideration of certain evidence—testimony from an expert witness and regarding a pair of bloody underwear [4]— so as to isolate any carryover effect such evidence might have on Counts II and III.

[¶ 22]Rule 105 of the Federal Rules of Evidence provides that:

> When evidence which is admissible as to one party or for one purpose but not admissible as to another party or for another purpose is admitted, the court, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly.

[¶ 23]The Rule directs a trial court, when requested, to instruct the jury to limit its consideration of evidence being admitted only against one party (in the case of co-defendants) or to limit it for a particular purpose (*e.g.,* other acts evidence, certain hearsay exceptions and convictions offered to impeach).

[¶ 24]Debra Baune, a licensed clinical social worker, testified at trial that sexually abused children often exhibit regressive behaviors, such as bed wetting after being potty trained, hyperactivity, aggressiveness, nightmares, sexual acting out and fears of persons and places. Bear Stops claims that Baune's testimony was only relevant to Count I and P.M.'s case and that he was prejudiced by not having the jury so instructed.

[¶ 25]The Eighth Circuit, however, found that such testimony "also pertained to the [C]ounts involving B.B.", 997 F.2d at 453,

---

4. Moore reported that she found a pair of P.M.'s underwear, with blood on the anal part of them, hidden at Bear Stops' sister's house. T.Tr. 281, 436–37. The underwear was the only physical evidence of P.M. being sexually assaulted. The Eighth Circuit ruled that precluding Bear Stops from cross examining

P.M.'s mother about the underwear and offering an alternative explanation for the blood on them was a denial of his Sixth Amendment right, was not harmless error and required that his conviction on Count I be reversed. *Bear Stops,* 997 F.2d at 457–58.

and that the testimony did not impermissibly "spill over" and poison Bear Stops' convictions on these Counts, 997 F.2d at 459. Trial counsel, therefore, had no basis in fact or law to request and obtain a limiting instruction and cannot be said to have acted deficiently or prejudiced Bear Stops by failing to seek one. *Strickland,* 466 U.S at 699–700, 104 S.Ct. 2052.

[¶ 26]Unlike the behavioral characteristics testimony offered by Baune, Moore's testimony concerning the bloody underwear she found pertained only to P.M. When asked about the underwear, Moore testified as follows:

Q. Can you explain that to the jury?

A. When [P.M.] stayed with Delores [Cook—— Bear Stops' sister] I went to her house and collected *his* clothing and I found *his* shorts and they had blood on them.

Q. In what part of the shorts?

A. In the anal part.

Q. Did you say or do anything, or what was going through your mind at that time when you discovered that?

A. I had a feeling that something had happened to *him.*

Q. Did you ever ask *him* about it?

A. Yes.

Q. And did *he* open up and talk to you about that instance?

A. No.

Q. Did Delores Cook ever buy anything for [*P.M.*]?

A. Yes.

Q. Can you tell the jury what Delores Cook bought for [*P.M.*]?

A. She bought *him* a lot of clothes. And she bought *him* a bike.

Q. Did she buy a bike or clothes for [B.B.]?

A. No.

T.Tr. 281–82 (emphasis added).

[¶ 27]As is apparent from the excerpts quoted above, Moore's testimony related to

and dealt solely with the blood she found on P.M.'s underwear and her suspicions that the boy had been sexually abused. Given the substance of this testimony and trial counsel's avowed strategy of showing that P.M. had been assaulted by three other boys during the charged time period, it is easy to understand why counsel made no attempt to object to or limit the admissibility of such testimony. Counsel should not be faulted or assailed for not taking a "fall-back" position that may very well have been inconsistent with or generated credibility problems for both he and Bear Stops. Moreover, professional competent assistance did not demand that counsel request a limiting instruction every time evidence was offered that was relevant only to P.M. or B.B. Juries are much more adept than they are often given credit for and this Court, like the Eighth Circuit, will not presume that the jurors in Bear Stops' case were unable to compartmentalize the "bloody underwear" testimony and properly consider each of the three Counts independently. *See* 997 F.2d at 459.

[¶ 28]More importantly, Bear Stops has failed to overcome the presumption that, under these circumstances, counsel's omission might be considered "sound trial strategy". *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052. Nor has he shown that the challenged omission was a plainly unreasonable exercise of professional judgment or was otherwise deficient. 466 U.S. at 690, 104 S.Ct. 2052.

[¶ 29]Even if, somehow, trial counsel's handling of the testimony in question was subpar under the first prong of the *Strickland* test, Bear Stops nevertheless suffered no actual prejudice as a result of it. After careful review of the trial record, this Court is convinced that there is no reasonable probability that the jury would have acquitted Bear Stops of the charges involving B.B. had counsel sought a limit-

ing instruction for such evidence. *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052; *Garrett v. United States*, 78 F.3d 1296, 1302–03 (8th Cir.), *cert. denied*, 519 U.S. 956, 117 S.Ct. 374, 136 L.Ed.2d 264 (1996); *Fenske v. Thalacker*, 60 F.3d 478, 481–82 (8th Cir.1995). Counsel's omission, therefore, did not rise to the level of ineffective assistance and cannot provide Bear Stops with a basis for § 2255 relief.

## B.

[¶ 30]Bear Stops next maintains that trial counsel was ineffective because counsel failed to move for a severance of Count I from Counts II and III or for separate trials. R. 291 at 21–24, 310 at 15–17, 19–21. According to Bear Stops, had Count I been severed from Counts II and III, the jury in B.B.'s case would not have heard most of the adverse evidence pertaining to P.M., and vice versa. Joinder of the three Counts into a single trial, he asserts, enabled the jury to conclude that he was a bad person who, because he had committed sex acts against two children, should be convicted.

[¶ 31]Initially, trial counsel, in all likelihood, had strategic reasons for not seeking a severance. Indeed, if P.M. and B.B.'s cases were severed, the government would have had *two* opportunities to admit potentially damning "other act" evidence against Bear Stops and to try and convict him of having sexual contact with a child. Counsel evidently made a tactical decision that it would be better for Bear Stops to risk going to trial on everything and arguing that P.M. and B.B. were sexually assaulted by someone else, than having to prevail *twice* before *two* juries. Such a decision was a reasonable one and well within the bounds of prevailing professional norms of practice. *See Nave v. Delo*, 62 F.3d 1024, 1035–36 (8th Cir.1995), *cert. denied*, 517 U.S. 1214, 116 S.Ct. 1837, 134 L.Ed.2d 940 (1996); *see also, Beran v. United States*, 580 F.2d 324, 327 (8th Cir.1978), *cert. de-*

*nied*, 440 U.S. 946, 99 S.Ct. 1422, 59 L.Ed.2d 634 (1979).

[¶ 32]Regardless, any assumed deficiency on the part of trial counsel is negated by the lack of any showing of prejudice. Bear Stops was charged with having sexual contact with two young boys, between the ages of four and six, who lived with him in the same household. As the indictment indicates, the charged offenses all took place over a 17–24 month time period in Red Scaffold, and two of the three offenses allege violations of the identical statutory provisions. Inasmuch as the charges were "of the same or similar character", *see United States v. Lindsey*, 782 F.2d 116, 117–18 (8th Cir.1986) (defining this phrase), joinder was proper under Fed.R.Crim.P. 8(a). Significantly, Bear Stops had little, if any, chance of obtaining relief pursuant to Fed.R.Crim.P. 14 because of the obvious difficulty he faced in establishing that joinder was so clearly prejudicial that it outweighed the interests of judicial economy and efficiency and violated his right to a fair trial. *See United States v. Running Horse*, 175 F.3d 635, 637 (8th Cir.1999) (in multi-count sexual abuse case involving two child victims, trial court accorded wide range of discretion with respect to joinder/severance matters and will not be reversed absent a finding of clear prejudice and abuse of discretion).

[¶ 33]Aside from this, the trial court minimized any prejudice that may have inured to Bear Stops' detriment by instructing the jury to determine his guilt for each Count separately. R. 214, Instr. No. 10. In doing so, the court admonished the jury not only to consider each offense and the evidence pertaining to it separately, but also of the following:

> The fact that you may find [Bear Stops] guilty or not guilty of any offense charged in one count of the indictment should not control your verdict as to an

offense charged in any other count for which [Bear Stops] is charged in this case.

*Id.*

[¶ 34]Taken together, in light of the record as a whole, trial counsel's failure to seek a severance did not render Bear Stops' trial fundamentally unfair or otherwise prejudiced him so as to satisfy the dictates of *Strickland. Wharton–El v. Nix,* 38 F.3d 372, 374–75 (8th Cir.1994) (citing to and relying on the "fundamentally unfair" standard applied in *Hollins v. Department of Corrections,* 969 F.2d 606, 608–09 (8th Cir. 1992)), *cert. denied,* 513 U.S. 1162, 115 S.Ct. 1126, 130 L.Ed.2d 1088 (1995).[5]

## C.

[¶ 35]Bear Stops also complains that the cumulative prejudice that accrued from trial counsel's ineffective assistance denied Bear Stops of a fair trial. R. 291 at 25–26, 310 at 18–19.

[¶ 36]In *Harris v. Housewright,* 697 F.2d 202, (8th Cir.1982), the Eighth Circuit held that ineffective assistance of counsel *could* be found based on the cumulative errors of trial counsel. *Id.* at 204–12. The Appeals Court, however, later determined that *Harris* was no longer good law in light of the Supreme Court's decision in *Strickland. Girtman v. Lockhart,* 942 F.2d 468, 475 (8th Cir.1991); *see also, United States v. Stewart,* 20 F.3d 911, 917–18 (8th Cir. 1994). Now, errors that are not unconstitutional individually *cannot* be added together to create a constitutional violation. *Wainwright v. Lockhart,* 80 F.3d 1226, 1233 (8th Cir.) (*citing Stewart,* 20 F.3d at 917–18), *cert. denied,* 519 U.S. 968, 117 S.Ct. 395, 136 L.Ed.2d 310 (1996). In fact, the Court has stated unequivocally that neither the cumulative effect of trial errors nor the cumulative effect of attorney er-

rors are grounds for prisoner relief. *Id.; see also, Wharton–El,* 38 F.3d at 375; *Griffin v. Delo,* 33 F.3d 895, 903–04 (8th Cir.1994); *cert. denied,* 514 U.S. 1119, 115 S.Ct. 1981, 131 L.Ed.2d 869 (1995).

[¶ 37] Bear Stops' complaint, therefore, is not sustainable under controlling precedent.

## D.

[¶ 38]During the trial, several witnesses were allowed to testify as to what P.M. and B.B. had said to them after the sexual assaults. The trial court overruled trial counsel's objections and admitted the testimony. Bear Stops now asserts that appellate counsel should have sought to exclude the testimony as inadmissible hearsay and was ineffective for not raising the issue on appeal. R. 310 at 21–24.

[¶ 39]To begin with, Bear Stops does not describe with any specificity the hearsay statements he alleges now are inadmissible. Nor does he point to facts in the record which substantiate a claim of trial court error. His assertion, therefore, is subject to dismissal as being conclusory and lacking the sufficiency necessary to state a claim for relief. *Hollis v. United States,* 796 F.2d 1043, 1046 (8th Cir.) ("vague and conclusory allegations are not sufficient to state a ground for relief under 28 U.S.C. § 2255"), *cert. denied,* 479 U.S. 965, 107 S.Ct. 468, 93 L.Ed.2d 412 (1986); *Voytik v. United States,* 778 F.2d 1306, 1308–10 (8th Cir.1985) (no evidentiary hearing required where prisoner failed to make specific, non-conclusory allegations); *Smith v. United States,* 677 F.2d 39, 41 (8th Cir.1982) (conclusory allegations, unsupported by any specifics, are subject to dismissal); *Smith v. United States,* 618 F.2d 507, 510 (8th Cir.1980) (wholly conclu-

---

**5.** The same holds true and applies as well to Bear Stops' contention that appellate counsel, who was also trial counsel, provided inade-

quate representation by failing to raise the severance issue on appeal.

sory claims will not suffice to command an evidentiary hearing).

[¶ 40]Moreover, it is important to note that P.M. and B.B. both testified at trial and that Bear Stops had the opportunity to confront and cross examine them. The Eighth Circuit has held that the Confrontation Clause is satisfied when the child victims/hearsay declarants appear and give live testimony in court and the accused has "an opportunity for effective cross examination". *United States v. Spotted War Bonnet*, 933 F.2d 1471, 1473–75 (8th Cir. 1991), *cert. denied*, 502 U.S. 1101, 112 S.Ct. 1187, 117 L.Ed.2d 429 (1992); *see also, Johnson v. Lockhart*, 71 F.3d 319, 320–21 (8th Cir.1995); *United States v. N.B.*, 59 F.3d 771, 775 (8th Cir.1995); *Eagle Thunder*, 873 F.Supp. at 1376; *compare, Olesen v. Class*, 164 F.3d 1096, 1099 (8th Cir. 1999). Any statements P.M. and B.B. made that were testified to by others, therefore, did not violate Bear Stops' rights under the Confrontation Clause.

[¶ 41]Whether, in light of the pleading and proof problems and the absence of any Confrontation Clause infirmity, Bear Stops' assertions continue to survive and state a constitutional claim is highly questionable. Any lingering viability these assertions may have is nullified by Bear Stops' failure to make the required showing of deficient performance and prejudice.

[¶ 42]Preliminarily, the statements complained of were elicited by trial counsel as part of a cogent trial strategy or were arguably admissible under the medical diagnosis or treatment and/or catchall exceptions to the hearsay rule. Appellate counsel thus would have been hard pressed to show trial court error.

[¶ 43]Appellate counsel did raise a number of evidentiary issues on appeal, prevailed on some of them and obtained a reversal of one of Bear Stops' three convictions. From reading the Eighth Circuit's decision, the issues raised by counsel were

significant ones that Bear Stops had a reasonable likelihood of succeeding on. The selection and "winnowing" of which issues to bring on appeal is a hallmark of effective advocacy; counsel is not required to raise every colorable issue on appeal. *Garrett*, 78 F.3d at 1305–06; *Jones v. Barnes*, 463 U.S. 745, 751–52, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983); *see also, Flores–Ortega*, 528 U.S. at 477–81, 120 S.Ct. 1029; *Smith v. Murray*, 477 U.S. 527, 536, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986). The Appeals Court's observations in *Simmons v. Lockhart*, 915 F.2d 372 (8th Cir.1990) are approbo here:

> Certainly, [appellate] counsel might have chosen to press this issue on appeal, and such a choice would have been reasonable. It does not follow that the opposite choice—— was unreasonable. Law is an art, not a science, and many questions that attorneys must decide are questions of judgment and degree. Among the most difficult are decisions as to what issues to press on appeal.... It is possible to criticize [counsel's] choice in hindsight. Perhaps the choice to press the issue would have been better. But we are dealing, after all, with fallible human beings, and a demand for perfection ... cannot be met.

*Id.* at 375. Counsel's failure to appeal the hearsay issues did not fall below the standard of objective reasonableness.

[¶ 44]Nor was Bear Stops prejudiced by appellate counsel's nonfeasance. The hearsay assertions, even if not properly raised and passed on, were not likely to have resulted in a reversal of the two convictions the Eighth Circuit let stand. Additionally, the neglected assertions do not taint or otherwise undermine the reliability of this Court's confidence in the result reached on appeal. *Zinzer v. State*, 60 F.3d 1296, 1299 (8th Cir.1995); *see generally, Flores–Ortega*, 528 U.S. at 481–87,

120 S.Ct. 1029; *Robbins,* 528 U.S. at 287–89, 120 S.Ct. 746.

### E.

[¶ 45]Bear Stops further claims that appellate counsel should have attacked the two convictions relating to B.B. (Counts II and III) on appeal and that counsel was constitutionally inadequate for failing to do so. R. 291 at 24, 310 at 18. In support of his claim, Bear Stops maintains that these two convictions arose out of a single sexual act—thereby implying that proof of a second act was necessary to convict him of both Counts— and that it was incumbent upon counsel to raise this point on appeal. Bear Stops likewise maintains B.B. never referred to Bear Stops as his "dad" at trial and that he was never identified as the child's sexual assailant.

[¶ 46]As was discussed earlier herein, *ante* at 4–6, appellate counsel did argue on appeal that the trial court's evidentiary errors pertaining to Count I "spilled over" into Counts II and III. Counsel, therefore, *did* challenge the validity of Bear Stops' convictions on the latter two Counts, albeit not on the grounds now being urged.

[¶ 47]It must be remembered that appellate counsel here was under no constitutional obligation to brief and argue issues on appeal that were unwinnable or lacking in merit. *Glass v. Higgins,* 959 F.2d 88, 91 (8th Cir.1992); *Horne v. Trickey,* 895 F.2d 497, 499–500 (8th Cir.1990). Both of Bear Stops' claims are sorely lacking in substance, and would, in all probability, have been given short shrift by the Eighth Circuit. Counts II and III emanated from the same incident and the jury concluded that the elements of each charged offense had been proven beyond a reasonable doubt. The record supports such a finding. *See* R.246 at 16–20. Furthermore and contrary to what Bear Stops maintains, B.B. identified his "dad" as the perpetrator, T.Tr. 93, 96–99, 102, and testimony was offered through Moore that B.B. called Bear Stops "dad", T.Tr. 816. Counsel's decision to eliminate tenuous claims such as these is exactly the kind of performance that courts expect from competent counsel and in no way prejudiced Bear Stops' chances of triumphing on appeal.

### F.

[¶ 48]Finally, Bear Stops argues that his appellate counsel was incompetent under the Sixth Amendment because counsel "never challenged [Bear Stops'] sentence or re-sentencing on appeal" and "failed to petition the United States Supreme Court for a Writ of Certiorari [in an effort to overturn] the convictions on Counts II and III". R. 310 at 18. Both arguments are legally insufficient and can be disposed of in short order.

[¶ 49]At the outset, Bear Stops does not support his arguments with the predicate facts required to state a claim for relief. His scanty, vague, speculative and conclusory allegations, made without elaboration or background substantiation, do not satisfy the pleading requirements for § 2255 cases or provide a colorable basis for relief under *Strickland. See Hill v. Lockhart,* 474 U.S. 52, 57–60, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985) (general allegation of ineffective assistance of counsel is insufficient; the defendant must allege specific facts establishing both unreasonable-representation and prejudice prongs of ineffective assistance standard); *Blackledge v. Allison,* 431 U.S. 63, 75 n. 7, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977) (petition must "state facts and point to a 'real possibility of error' "); *Voytik,* 778 F.2d at 1310 ("to make a claim for ineffective assistance of counsel [the defendant] must plead facts sufficient to show that his counsel's performance fell below an objective standard of reasonable representation and that he was prejudiced by this deficient performance");

*see also, United States v. Robinson,* 64 F.3d 403, 405 (8th Cir.1995); *Hollis,* 796 F.2d at 1046. Accordingly, both arguments are subject to summary dismissal. *Thomas v. United States,* 27 F.3d 321, 326–27 (8th Cir.1994); *Voytik,* 778 F.2d at 1307–10; *Smith,* 677 F.2d at 41; *Whitney v. United States,* 513 F.2d 326, 329–30 (8th Cir.1974).

[¶ 50]In addition, this Court is unable to find that there is a reasonable probability that appellate counsel would have been successful in challenging either of Bear Stops' sentences on appeal. It thus follows that counsel's inactions were not constitutionally ineffective. *See Drew v. United States,* 46 F.3d 823, 826–27 (8th Cir.), *cert. denied,* 516 U.S. 817, 116 S.Ct. 72, 133 L.Ed.2d 33 (1995).

[¶ 51]Similarly, the fact that appellate counsel did not file a certiorari petition with the United States Supreme Court did not make appellate counsel's representation inadequate or actionable. Certiorari review by the Supreme Court is discretionary, *see Ross v. Moffitt,* 417 U.S. 600, 616–17, 94 S.Ct. 2437, 41 L.Ed.2d 341 (1974), and the Supreme Court has held that there is no constitutional right to counsel to pursue discretionary appeals, *id.* at 619, 94 S.Ct. 2437; *Wainwright v. Torna,* 455 U.S. 586, 587, 102 S.Ct. 1300, 71 L.Ed.2d 475 (1982). Because Bear Stops had no constitutional right to counsel, he was not deprived of effective assistance when his counsel did not seek a writ of certiorari. *Torna,* 455 U.S. at 587–88, 102 S.Ct. 1300; *Miller v. Keeney,* 882 F.2d 1428, 1431–32 (9th Cir.1989); *United States v. Lauga,* 762 F.2d 1288, 1291 (5th Cir.), *cert. denied,* 474 U.S. 860, 106 S.Ct. 173, 88 L.Ed.2d 143

(1985); *United States v. Lena,* 670 F.Supp. 605, 613 (W.D.Pa.1987), *aff'd,* 849 F.2d 603 (3rd Cir.), *cert. denied,* 488 U.S. 894, 109 S.Ct. 232, 102 L.Ed.2d 222 (1988); *see also, United States v. Swint,* Crim. No. 94–276, Civ. No. 98–5788, 2000 WL 987861 (E.D.Pa. July 17, 2000). This being the case, Bear Stops' argument must be rejected as being totally devoid of merit. *Id.*

## VII.

[¶ 52]Upon due consideration of the record in light of applicable law, this Court believes that Bear Stops is not entitled to relief under § 2255 and that his Motion and the supplement to it, should be dismissed in their entirety. Accordingly, based on the foregoing findings of fact and legal discussion and pursuant to 28 U.S.C. § 636(b) and Rule 8(b) of the § 2255 Rules, it is hereby

[¶ 53]RECOMMENDED that Bear Stops' Motion to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody and the supplement thereto, Docket Nos. 291, 310, be DENIED in all respects and that the case be DISMISSED with prejudice.[6]

Aug. 18, 2000.

6. In the "Request for Relief" portion of the supplement to his Motion, Bear Stops requests, in the event his Motion is denied, that a Certificate of Appealability be issued so he "can submit the issues to the Eighth Circuit Court of Appeals for appellate review." R.

310 at 25. This Court expresses no opinion as to whether such a Certificate should be issued and what issue(s), if any, satisfy the showing required by 28 U.S.C. § 2253(c)(2), believing that such a question should be left for the District Court to decide.